KERSEY COATES, as Assignee, etc., Respondent *v.* THE FIRST NATIONAL BANK OF EMPORIA et al., Appellants.

On August 1, 1878, the M. Bank of Kansas City had a balance to its credit in the hands of D., L. & Co., its agents and correspondents in the city of New York. M. was a depositor in said bank, and it was on that day indebted to him in the sum of $5,000. M. was also a depositor with D., L. & Co. It was the practice of the parties, founded on a prior agreement, for the M. Bank, at the request of M., to provide funds for his account with D., L. & Co., by ordering the latter to transfer from its account to that of M. such sums as it was directed by M. to remit. In accordance with this agreement and custom M., on July 30, 1878, wrote to the M. Bank to remit $5,000 to D., L. & Co. for his credit and charge his account with the same. This letter was received by the M. Bank , it thereupon charged M. with the $5,000 and credited itself therewith and also credited D., L. & Co. with the same amount, and on August first mailed to M. a letter stating it had remitted for his credit the sum required. On the same day it sent to D., L. & Co. a paper signed by its proper officers directing that firm to " pay to the order of credit, M. $5,000." A formal letter of advice was also sent to D., L. & Co. in the same envelope. On August 3, the M. Bank assigned all its property to plaintiff for the benefit of creditors. On August 5, plaintiff notified D., L. & Co. by telegram of the assignment, which notice was received by that firm about two hours before receipt of the letter of advice and order. In September plaintiff demanded payment of the apparent balance, which D., L. & Co. refused to pay over. In an action to recover the same, *held,* that the transaction, as between the parties, amounted to an assignment to M. as of August 1, of $5,000 of the indebtedness of D., L. & Co. to the M. Bank ; that it was not essential to a valid transfer that D., L. & Co. should be apprised of it ; that plaintiff, as voluntary assignee, occupied no better position than his assignor ; that the paper directing payment sent by the M. Bank to D., L. & Co. was not intended or delivered as a bill of exchange and was not a necessary act so far as title was concerned, but was effectual only as a voucher or notice of the rights of M.; and that the latter was entitled to the sum in question.

*Att'y-Gen'l* v. *C. L. Ins. Co.* (71 N. Y. 325; 27 Am. Rep. 55), *Prince* v. *O. Bank Corp.* (L. R., 3 App. Cas. 325), distinguished.
*Coates* v. *First Nat. B'k* (15 J. & S. 322), reversed.

(Argued November 17, 1882; decided January 16, 1883.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York entered upon an order made the first Monday of March, 1881, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 15 J. & S. 322.)

The controversy came up on interpleader proceedings, directed in an action brought by Kersey Coates as assignee of the Mastin Bank against Robert W. Donnell, Leonidas M. Lawson and George E. Simpson, to recover a balance claimed to be in their hands, growing out of collections for, and deposits made with them, by the Mastin Bank in the course of its business of banking. The following are the material facts: The Mastin Bank is a corporation under the laws of the State of Missouri, and until its assignment to the plaintiff, transacted business at Kansas City in that State. On the third day of August, 1878, it assigned its entire property to the plaintiff in trust for the benefit of creditors. Before that time, and up to, and including August 5, 1878, the said Robert W. Donnell, Leonidas M. Lawson and George E. Simpson, bankers in New York city under the firm name of Donnell, Lawson & Co., were agents and correspondents of the Mastin Bank, and as appeared by their books were then indebted to it. On the fifth of August the plaintiff notified them by telegram of the assignment, and in September, demanded payment of the apparent balance; they refused, saying that the Emporia Bank and Jenkins W. Morris were entitled to it. He then commenced this action, and upon their application, the defendants were allowed to pay into court the money claimed, and have substituted in their place as defendants, the "First National Bank of Emporia," and Jenkins W. Morris, and others (who, having made default, need not be mentioned), and be thereupon discharged from liability to the plaintiff, or to either of these substituted defend-

ants.   This order was complied with, and the defendants, the "First National Bank of Emporia" and Jenkins W. Morris, answered, claiming the whole of said money, then amounting to $10,023.89, upon these grounds, viz.: prior to, and on the first day of August aforesaid they were depositors in the Mastin Bank, and it was then indebted to each in the sum of $5,000.   They were also depositors with Donnell, Lawson & Co., and the practice between that firm and this bank and Morris was for the Mastin Bank at the request of the Emporia Bank, or Morris, to provide funds for their account and credit with Donnell, Lawson & Co., by ordering the latter to transfer from its account and credit to the credit of either of these defendants, as the case might be, such sums as the Mastin Bank was directed by its depositor to remit.   This practice was founded on a prior agreement, and on the 30th of July, 1878, in accordance with it and the usual course of business between the parties, Morris, under the name of the "Salina Bank" (in which he did business), wrote the Mastin Bank to "remit $5,000 to Donnell, Lawson & Co., New York, for our credit, and charge our account for the same."   This was received by the Mastin Bank, and it then charged the Salina Bank $5,000 at the same time crediting itself therewith as paid to the Salina Bank, and also crediting Donnell, Lawson & Co. the same amount, and charging itself in their account.   On the first day of August the Mastin Bank wrote the Salina Bank, under that date, "your favor of the 30th received; we remit Donnell, Lawson & Co., New York, for your credit, $5,000," the letter was mailed on the same day. A like course was pursued in regard to a remittance of $5,000 requested by the Emporia Bank, under date of July 31.   On the same day the Mastin Bank sent to Donnell, Lawson & Co., a paper signed by its proper officer, in these words: "$5,000. Pay to the order of credit, the First National Bank of Emporia, Kansas, $5,000," and another similar order, save in the name which read "J. W. Morris."   A formal letter of advice to Donnell, Lawson & Co., as to each order, was placed in the same envelope. These papers reached that firm on the fifth day

of August, and about two hours after the receipt of notice of the assignment to the plaintiff.

*Rastus S. Ransom* for appellants.   A chose in action may be assigned by parol. (*Trescott v. Hull*, 17 Johns. 284; *Ford v. Stewart*, 19 id. 342 ; *Ressel v. Albetis*, 56 Barb. 362 ; *Dawson v. Cole*, 16 Johns. 54; *Sheridan v. Mayor*, 68 N. Y. 30 ; *Lawrence v. Fox*, 20 id. 268 ; *Els v. Finch*, 5 Johns. 194; 2 Mass. 86 ; 4 id. 508 ; 1 Dall. 139 ; 1 Bosw. & Pull. 447; 1 Johns. Ca. 51, 411; *Dawson v. Coles*, 16 Johns. 54.) The terms of this contract had been assented to by the bank and defendants, and were therefore binding upon them. (3 Johns. 534; 37 N. Y. 325 ; 19 id. 310 ; 48 id. 614 ; *Risley v. Phœnix Bk.*, 83 id. 318.)   The letter was a valid assignment in law, the orders were but incidental. (*Young v. Second Ward Bk.*, 14 Rep. 448.)   The orders amount to an equitable assignment. (*Hill v. Miller*, 76 N. Y. 32; 1 Parsons on N. & B. 14, [2d. ed.] 52; 1 Barb. 454; 16 Johns. 50; 19 id. 342–95 ; Voorhees' Code [8th ed.], 112, note 9; 68 N. Y. 30; *Ford v. Anglerodt*, 37 Mo. 53 ; *Mandeville v. Walsh*, 5 Wheat. 277; *Christmas v. Russell*, 14 Wall. 69 ; *McLoon v. Lingnist*, 4 Benedict, 9 ; *Walker v. Mauro*, 18 Mo. 564; *McLean v. Weidemeyner*, 25 id. 366; *Sealey v. Dugdale*, 34 id. 99 ; 24 id. 517 ; *Laughlin v. Fairbanks*, 8 id. 367 ; *Rogers v. Gasnell*, 58 id. 589 ; 2 Greenl. on Ev., § 109; *Sett v. Morris*, 4 Simmons, 607 ; Bispham's Eq. [2d. ed.] 221 ; *Yeates v. Graves*, 1 Vesey Jr. 279–280 ; *Biron v. Carvalho*, 4 M. & C. 702 ; *Munger v. Shannon*, 61 N. Y. 251, 256, 257 ; *Lowery v. Steward*, 25 id. 239 ; *Morton v. Naylor*, 1 Hill, 583.) The orders not being bills of exchange, an oral acceptance was good. (*McMenomy v. Ferrers*, 3 Johns. 82–83 ; *Hossack v. Rogers*, 6 Paige, 415 ; *Hall v. City of Buffalo*, 1 Keyes, 193 ; *Vreeland v. Blunt*, 6 Barb. 182 ; *Weston v. Barker*, 12 Johns. 276 ; *Canfield v. Munger*, id. 346 ; 2 Story Eq. Juris., §§ 972, 1039, 1040, 1041, 1042, 1044, 1048, 1057.) These orders were but banker's checks, and in equity, as between drawer and defendants, are assignments or appropriations of so

much of the fund, and the bank on which they were drawn is liable to the holder. (*McGrade* v. *German Savings B'k*, 4 Mo. App. 330, 401; *Price* v. *Bannister*, 3 Q. B. D. 569; *Morton* v. *Taylor*, 1 Hill, 583; *Bradley* v. *Root*, 5 Paige, 632; *Phillips* v. *Stagg*, 2 Edw. Ch. 108; *Marshall* v. *Meech*, 51 N. Y. 140; *Alger* v. *Scott*, 54 id. 14; *Brown* v. *Mayor*, 48 Sup. Ct. 22; *Jones* v. *Mayor*, 47 Supr. Ct. 242; *Field* v. *Mayor*, 2 Seld. 179; *Risley* v. *Phœnix B'k*, 83 N. Y. 318.) The plaintiff took by the assignment to him the assets of the Mastin Bank, subject to all liens thereon, and equities existing in favor of the creditors of the bank. (1 Paige, 125; 11 id. 21; 3 Sandf. Ch. 333; 1 Barb. 486; 2 Story Eq. Juris., § 1228; *Mitford* v. *Mitford*, 9 Ves. 100; *Jewson* v. *Moulson*, 2 Aik. 417; *Worral* v. *Marlar*, 1 P. Will. 459; Mr. Cox's note; *Peak* v. *Lightoller*, 1 Madd. Ch. 346; *Grant* v. *Mills*, 2 Ves. & B. 309; *Chapman* v. *Tanner*, 1 Vernon, 267.) There is no difference between an assignment for the benefit of creditors under the statute and an assignment under the Bankrupt Law. (*Bayley* v. *Greenleaf*, 7 Wheat. 54, 55; *Green* v. *Demas*, 10 Humph. [Tenn.] 371; *Roberts* v. *Corbin & Co.*, 26 Iowa, 327; *Clark* v. *Mauran*, 3 Paige, 373; *Bradley* v. *Root*, 5 id. 632.) The assignment to plaintiff is void under the laws of this State. The defendants are not residents of this State nor of Missouri. (Wharton on Conflict of Laws, §§ 353, 348a; *Masshman* v. *Cain*, 34 Barb. 66; 7 Wall. U. S. 151.) An assignment made in another State will not be held valid when it conflicts with laws of the State where it is sought to be enforced. (Story's Conflict of Laws, § 344; *Bryan* v. *Bresbin*, 26 Mo. 423; *Kelly* v. *Crapo*, 45 N. Y. 94; *Holmes* v. *Remsen*, 20 Johns. 264.) Contracts in regard to personal property, if against the laws of the State where it is situated, or repugnant to the policy of such State, will not be held valid. (Story's Conflict of Laws, 244; *Zipcey* v. *Thompson*, 1 Gray [Mass.], 243; *Frazier* v. *Fredericks*, 4 Zabriskie, 166; *Smith* v. *Union Bk. of Georgetown*, 5 Pet. 518; 12 Wheat. 259; Burr on Assignments [2d ed.], 366; *Olyphant* v. *Atwood*, 4 Bosw. 461; *Hibernia Nat. Bk.* v. *Lacomb*, 84 N. Y. 367.) When the

orders were delivered by the Mastin Bank to the public mails, that constituted delivery to the defendants. (*Barry* v. *Equitable Life Ins. Co.*, 59 N. Y. 594; 11 id. 441; 22 id. 527; 36 id. 307; 1 Par. on Cont. [6th ed.], 484; 2 id. 582; *Vassar* v. *Comp.*, 11 N. Y. 441; *Minnesota Oil Co.* v. *Collier Lead Co.*, 4 Dillon, 431; *Johnson* v. *Sharp*, 31 Ohio, 611; *Longstrass* v. *German Ins. Co.*, 48 Mo. 201; 6 Wend. 183; 1 B. & Ad. 681; 1 Mo. App. 585; 36 N. Y. 307.)

*George H. Adams* for respondent. The alleged assignment was never made, was never an enforceable contract in Missouri, but constituted a contract or transfer or assignment only in New York, and must be judged by the laws of New York. (*Cook* v. *Moffat*, 5 How. [U. S.] 295; 6 Peters, 635; Story on Conflict of Laws, § 287; *Lee* v. *Sellick*, 33 N. Y. 615; *Cook* v. *Litchfield*, 5 Seld. 280, 290; *Hyde* v. *Goodnow*, 3 Coms. 270; *Lawrence* v. *Bassett*, 5 Allen, 140; *Lunt* v. *B'k of N. A.*, 49 Barb. 221.) The assignment to the respondent operated as a valid and complete assignment of the debtor's property situated in New York. (*Ackerman* v. *Cross*, 54 N. Y. 29; *Boese* v. *King*, 78 id. 471.) The drafts are clearly bills of exchange. (Byles on Bills, 1, 128; Story on Bills, § 60; Chitty on Bills, § 182; *Wells* v. *Brigham*, 6 Cush. 6; *Michigan B'k* v. *Eldred*, 9 Wall. 544, 547; *Ellison* v. *Collingridge*, 9 C. B. 570; *Morris* v. *Lee*, 2 Ld. Raymond, 1396; 1 Daniel on Negotiable Instruments, § 35; *Risley* v. *Phœnix B'k*, 83 N. Y. 318.) The drafts did not constitute an equitable assignment. (*Christmas* v. *Russell*, 14 Wall. 84; *Risley* v. *Phœnix B'k*, 83 N. Y. 318; *Mandeville* v. *Welsh*, 5 Wheat. 277, 286; *Dickey* v. *Harmon*, 1 Cranch C. C. 201; *Strain* v. *Gourdin*, 11 Bank. Reg. 156; *Randolph* v. *Conley*, id. 296; *Winter* v. *Drury*, 5 N. Y. 525, 630; *Tyler* v. *Gould*, 48 id. 682; *Lunt* v. *B'k of N. A.*, 49 Barb. 221; *Rosenthal* v. *Mastin B'k*, 21 Alb. L. J. 28; *Att'y-Gen.* v. *Ins. Co.*, 71 N. Y. 325; *B'k of Commerce* v. *Bogy*, 44 Mo. 13; *Kimball* v. *Donald*, 20 id. 577; *Ford* v. *Angelbrodt*, 37 id. 50; *Burnett* v. *Crandall*, 63 id. 410; *Walker* v. *Mauro*,

18 id. 564; *Bryan* v. *Brisbane*, 16 id. 423; *McGrade* v. *Germ. S'vgs Ins.*, 4 Mo. App. 330.)

DANFORTH, J. The question was whether the defendants were entitled to have the money in the hands of Donnell, Lawson & Co. applied in discharge of their claims, or whether it should be paid to the plaintiff. The learned referee held in favor of the plaintiff, and his decision has been approved by the General Term.

In this conclusion there was error. It seems to be well settled that a mere check or draft does not operate as an assignment or appropriation of the drawer's deposit in favor of the payee before acceptance by the bank (*Harris* v. *Clark*, 3 N. Y. 93; *Atty. Genl.* v. *Continental Life Ins. Co.*, 71 id. 325; 27 Am. Rep. 55), but the doctrine has not been extended beyond instruments of that character, drawn in the ordinary form; nor to a transaction not restricted to the very terms of such paper. The subject was recently before us in *Risley* v. *The Phœnix Bank of the City of New York* (83 N. Y. 318; 38 Am. Rep. 421), and it was held in substance that when in addition to the check there was an oral agreement between the drawer and payee, by which the former for a valuable consideration, agreed to assign so much of the indebtedness of the bank to him as was represented by the check, and the check was given to enable the payee to collect and recover the portion of the debt assigned, the agreement operated as an assignment, and was sufficient to vest in the payee a title to that portion of the debt. There was in that case presentation of the check and demand of payment before the adverse claim attached, and so, as the jury found, notice of the transfer; but that question is unimportant here, for the position of the plaintiff as a voluntary assignee for the benefit of creditors, is no better than that of his assignor (2 Story's Eq. Jur. [10th ed.], § 1228; Burrill on Assignments [2d ed.], 483), and it was not essential to a valid disposition of the claim that Donnell, Lawson & Co. should have been apprised of it. (*Muir* v. *Schenck*, 3 Hill, 228; *Beckwith* v. *Union Bank*, 9 N. Y. 211; *Bradley* v. *Root*, 5

Paige, 632.) The only object of notice is to put the debtor on his guard against dealing with the assignor on the belief that he still continued the owner of the debt. (*Graves* v. *Woodbury*, 4 Hill, 559; *Beckwith* v. *Union Bank, supra, Baker* v. *Kenworthy*, 41 N. Y. 215; *Martin* v. *Kunzmuller*, 37 id. 396.) The notice actually given was sufficient, however, even to bind Donnell, Lawson & Co. They received it before the claim of Coates was made known, much less assented to; for it should be observed that information given by him in August was merely that he had been appointed assignee of the bank, and that an assignment had been made. The specific fund was not demanded until September, long after advices had been received as to the claim of the Emporia Bank, and the letter and order from the Mastin Bank. During all that time they retained the money, made no offer to return the draft or order, claimed that the fund belonged to these defendants, and now by bringing it into court, subject it to equitable distribution. Under such circumstances notice *pendente lite* even is sufficient.

The question would be different if there were two *bona fide* purchasers for value, claiming the same fund, but as there are not we are to look at the transaction as between the Mastin Bank and its corresponding banks, the "Emporia Bank" and the "Salina Bank" (or Morris), and as they stand on the same ground it will be convenient to speak of one only — the Emporia Bank.

I am unable to see why, on the first day of August, there was not a complete and consummated contract between that bank and the Mastin Bank. The Mastin Bank, up to that day, owed the Emporia Bank, and was requested to pay its debt by transferring funds then with Donnell, Lawson & Co. They say by letter, "we will do so," at once charge the Emporia Bank, and credit themselves with $5,000; on the same day, by letter, they inform the Emporia Bank that this has been done, and in fact they direct Donnell, Lawson & Co. to "pay to the order of credit, the Emporia Bank," the sum named. The Emporia Bank also credited the Mastin Bank with it. These circum-

stances in the conduct of both parties establish an agreement, the effect of which, as between the Mastin Bank and the Emporia Bank, was to estop the former from setting up that so much of the credit to which they were before entitled from Donnell, Lawson & Co. did not belong to the Emporia Bank, and the Emporia Bank from saying that so much of the debt before due from the Mastin Bank to it had not been extinguished. (*Allen* v. *Culver*, 3 Den. 284–292.) Written out, the contract indicated by the bank entries and the correspondence is one of assignment of so much of the credit, or funds then to its credit with Donnell, Lawson & Co., to the Emporia Bank, and a discharge of a debt due by it to that bank. The whole was completed the moment the letter of the Mastin Bank to the Emporia Bank was placed in the post-office. (*Graves* v. *American Ex. Bk.*, 17 N. Y. 205 ; *Brogden* v. *Metropolitan Ry. Co.*, L. R., 2 App. Cas. 666, 692 ; *Ex parte Harris*, L. R., 7 Ch. App. 596 ; *Barry* v. *Equitable Life Assurance Society*, 59 N. Y. 587, 594 ; *Wayne Co. Savings Bk.* v. *Low*, 81 id. 566 ; 37 Am. Rep. 533.)

Nothing further remained to be done. If the Mastin Bank could transfer the fund, it did transfer it by those acts. The paper which is called a draft needed no indorsement by the Emporia Bank, nor was it intended for its hands. It was not delivered to any one as a bill of exchange, nor did it require acceptance by the drawees. (*Morton* v. *Naylor*, 1 Hill, 584 ; *Lowery* v. *Steward*, 25 N. Y. 239.) It indicated to Donnell, Lawson & Co. an act to be done, but it was not a necessary act so far as title was concerned, and was effectual only as a voucher (*Lowery* v. *Steward, supra*), or notice of the rights of the Emporia Bank ; it did not confer or establish any. As between these parties the credit or funds had ceased to be the property of the Mastin Bank. The Emporia Bank was no longer creditor, because it was paid. The credit, or right to call upon Donnell, Lawson & Co. for the same amount, was the means of payment.

In the ordinary case of a check or bill of exchange the banker determines whether the state of his customer's account will jus-

tify him in complying with the request to pay. But if he pays he does so from his own money. Here by the act of the customer, the title to the account itself had passed from him, and the check, or order, as it may more properly be called, was, between the customer and the assignee — the Emporia Bank, of no importance. The bankers, by virtue of the assignment, owed the money specified in the account, to the Emporia Bank, and it was not a matter as to which they had any discretion to exercise. True, before notice they might have paid to the customer, or to his order, but that feature is not in the case. The conduct of the parties here had the same effect as the transaction suggested by Lord MANSFIELD in *Heath* v. *Hall* (2 Rose, 271), viz. : "If two men agree for the sale of a debt, and one of them gives the other credit in his book for the price, that may be a very good assignment in equity," and is within the doctrine which upholds, as a sufficient assignment, an agreement that a debt owing shall be paid out of a specific fund belonging to the debtor, or an order given by him to his creditor upon a third person owing money or having funds belonging to the giver of the order, directing such person to pay the creditor out of such funds. (*Burn* v. *Carvalho*, 4 M. & C. 690.) That case is quite in point. The facts were that one Fortunato gave to Burn, his creditor, an order upon Rego, his agent, who then held goods or money of his (Fortunato's), directing him (Rego) to pay Burn his debt. Burn sent the order to Rego, but before it reached him Fortunato became bankrupt, and his assignees, Carvalho and others, insisted that because notice of the transaction had not reached Rego before the act of bankruptcy by Fortunato, the goods or funds remained subject to the order and disposition of Fortunato, as apparent owner at the time of the act of bankruptcy, and the assignees were entitled thereto. But it was held that Burn was the true owner and had a good title as against the assignees.

In the case before us, as in that, there was an existing fund in the agent's hands, and a distinct contract by the debtor with its creditor, to discharge the liability out of that fund, and to give directions for that purpose. That in this case directions

were sent to the agent by the debtor, and in the one cited, by the creditor, can make no difference. In neither case did it reach the agent before assignment.

I have not overlooked the contention of the respondent that the entries were mere matter of book-keeping for the convenience of the bank. It might be so if they stood alone. But taken in connection with the letters between the parties, and the order and letter of advice sent to Donnell, Lawson & Co., they are equivalent to an actual transfer of credit, or account; to an assignment, therefore, at least in equity, of the fund in the hands of Donnell, Lawson & Co. Somewhat similar circumstances were considered in *Prince* v. *Oriental Bank Corp.* (L. R., 3 App. Cas. 325), and were held insufficient to charge the bank making them, but it was on the ground that the banks whose acts came in controversy were in substance the same, each being a branch of one bank, yet the court assume that it would be otherwise if the parties were distinct, and the transactions had been communicated to the plaintiff — the party in interest, and in that case that the party making them would be estopped from saying it did not hold the money in question to his account. "But," they say, "no such communication was made, and before any thing was known beyond the walls of the bank itself," the order was canceled and withdrawn;— citing *Simson* v. *Ingham* (2 Barn. & Cres. 65) where it was held that the entries by bankers in their own books did not amount to a complete appropriation until that fact was communicated to the party to be affected by it.

In *Pratt* v. *Foote* (9 N. Y. 463) the plaintiff, a private banker, was held charged as on an agreement by entries made in the books of his bank, although not communicated to the defendant, and the latter was relieved from an obligation by reason of them. In the case before us the entries were preceded by the letter of the Emporia Bank, requesting a transfer of credit, accepted by the Mastin Bank, and the books made to conform thereto. Taken together they conclude the Mastin Bank and of course its voluntary assignee. They show an intention on its part to transfer to the Emporia Bank a specific

amount of the fund on deposit with Donnell, Lawson & Co.; and this fact also distinguishes the case from *Attorney-General* v. *Continental Life Ins. Co.* (*supra*) on which the respondent so earnestly relies (see observations of CHURCH, Ch. J., p. 331), and as that intention was carried out by the communication between the parties and the instructions given to Donnell, Lawson & Co., the Mastin Bank did not thereafter "retain any control over the fund, any authority to collect, or any power of revocation." Therefore the claim of the defendants can be supported without departing from the principle upon which both the cases last referred to, and *Christmas* v. *Russell* (14 Wall. 84), also cited by the respondent, were decided.

It follows that the fund did not pass to the assignee. (*Hopkins* v. *Banks*, 7 Cow. 650 ; *Muir* v. *Schenck, supra ; Osborn* v. *Thomas*, 46 Barb. 514.) The assignment to him is dated August 3; it purports to transfer the property "and credits" of the Mastin Bank; of course it speaks as of the day of its date, and on that day the credit in question was not its property. It could not withdraw or change its application and so revive its indebtedness to the Mastin Bank, or that of the defendants to itself. It does not appear, however, that the Mastin Bank undertook to again deal with this fund, or to assign it to its trustee, nor, if it had been possible to do so, that it undertook to deprive the defendants of the benefit of the contract under which they claim. It follows from these observations that the learned referee erred in finding that the money in question passed by assignment to the plaintiff, and that the defendants were not its owners. The facts upon which the question turns are not disputed, and we reach this conclusion without impairing the rule which in case of conflicting evidence makes the decision of the trial court binding upon an appellate tribunal. The learned counsel for the plaintiff urges that there is a variance between the defendants' answer and their proofs, but it is not suggested that such objection was taken upon the trial, and it cannot be successfully raised now for the first time. (*Fitch* v. *Rathbun*, 61 N. Y. 579.)

The judgment appealed from and that entered upon the

report of the referee should be reversed and a new trial granted, with costs to abide the event.

All concur, except RAPALLO, J., absent.

Judgment reversed.