## In re PRUDENCE CO., Inc.

### No. 231.

Circuit Court of Appeals, Second Circuit.

Kaufman, Weitzner & Celler and Thomas Cradock Hughes, all of New York City (Emil Weitzner, Thomas Cradock Hughes, and Harold S. Lynton, all of New York City, of counsel), for appellants, trustees of the debtor.

James B. Alley, Gen. Counsel, and Max O'Rell Truitt, Sol., both of Washington, D. C., and Root, Clark, Buckner & Ballantine, Special Counsel, of New York City (William P. Palmer and Everett I. Willis, both of New York City, of counsel), for appellee Reconstruction Finance Corporation.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

October 2, 1931, the debtor became the owner of a consolidated bond and first mortgage in the principal amount of $2,300,000 upon an apartment house in New York City. On February 16, 1932, a formal application was submitted to the appellee for a loan not to exceed $25,000,000. The proposed collateral was listed in a schedule attached. Appellee's board of directors rejected the offered collateral and designated the security it would require. The security upon which the disputed amortization payments were made consists of the above mortgage. In the application, this mortgage was offered and listed at $2,270,000 comprising a senior participation of $2,100,000 and a junior interest in the mortgage of $170,000 to be hereinafter referred to. On April 1, 1932, the appellee loaned the debtor $1,500,000. Under an agreement dated June 7, 1932, the loan was increased to $20,000,000, for which the debtor gave its note in the same amount. Since August 15, 1933, this note has been due and remains unpaid. The collateral pledged to secure the note was delivered to the appellee at the time of the pledge and has always remained in its possession.

Both in the note and in the loan agreement of June 7, 1932, the debtor was given specified rights with respect to sums received from the collateral. As long as an event of default did not take place, of which 10 were enumerated, the debtor was "entitled to collect, receive and receipt for all sums due by way of principal, interest or otherwise" on the obligations comprised in the collateral. These funds were to be segregated and kept as trust funds in a separate account and were not to be "subject to any claims by any general creditors" of the debtor. Every month a statement of collections was to be rendered and the accounts were to be paid over except that "so long as there shall not exist an event of default * * * the Applicant (debtor) at the time of rendering such monthly statements may withdraw from such special account and retain for its own account, any and all sums representing interest collected by it on the Collateral." These provisions were subject to the right reserved in the appellee at any time and without notice to or consent by the debtor to directly collect and enforce the payment of any or all the obligations comprised in the collateral. The debtor opened trust accounts and all collections were kept therein. Collections of principal were paid over to the appellee except for the amortization payments to be herein considered. Interest payments were withheld by the debtor until March 31, 1933, when the appellee gave notice of an event of default which consisted in the cessation of ordinary business due to regulations promulgated March 16, 1933, by the New York Banking Board. Thereafter and until February 1, 1935, collections of interest were remitted. On the latter date the appellants, as trustees of the debtor under Bankr.Act, section 77B (11 U.S.C.A. § 207), refused to do so. Collections of interest since then, aggregating $508,112.27, have been kept in separate accounts pending the result of this controversy.

It is claimed by the appellants that the rights reserved to the debtor over the interest collections constituted an unfettered dominion over the pledge res which invalidated the entire pledge of collateral as against the trustees. The argument proceeds that an unrestricted dominion over the pledged property by the pledgor is incompatible with the creation and existence of a lien. Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991. Where such dominion exists, the lien is invalid because of an inherent repugnancy between the pledge and the reserved power and not because of any theory of ostensible ownership resulting in the deception of the

pledgor's creditors. Benedict v. Ratner, supra; Brown v. Leo, 12 F.(2d) 350 (C.C.A.2). The grant of unfettered dominion makes the pledge fraudulent and void in toto as to creditors. In re Leslie-Judge Co., Inc., 272 F. 886 (C.C.A.2), certiorari denied 256 U.S. 704, 41 S.Ct. 625, 65 L.Ed. 1180. In Benedict v. Ratner, supra, an assignment was made of book accounts receivable or which should thereafter accrue. The assignee could demand a full disclosure of the assignor's business and it could require the amounts collected to be applied to the loan. Until he did so, however, no payment was to be made. Accounts collected and used by the assignor did not have to be replaced. There were no restrictions as to use, manner of collection, or method of keeping proceeds. Construing the applicable law of New York (see Zartman v. First Nat. Bank, 189 N.Y. 267, 82 N.E. 127, 12 L.R.A.[N.S.] 1083), the court held that the assignor possessed "unrestricted dominion" and the assignment was held invalid. Such dominion was considered inconsistent with the effective disposition of title. Similarly, where moneys are assigned as security for a loan under an agreement giving the borrower unrestricted use, the assignment is void and the purported lien a nullity. Blue v. Herkimer Nat. Bank, 30 F.(2d) 256 (C.C.A.2).

■ Obviously not every grant of control will invalidate the pledge; and the difficulty arises in drawing the line of demarcation. Essential to the creation of a pledge is the delivery of possession, whether it be of the property itself, as in the case of chattels, or of the evidence of ownership, as in the case of choses in action. Casey v. Cavaroc, 96 U.S. 467, 24 L.Ed. 779. The appellant has always had possession of the collateral. The right of collection by the pledgor does not vitiate the pledge. Manufacturers Finance Co. v. Armstrong, 78 F.(2d) 289 (C.C.A.4). Moreover, the pledgor may use the original collateral for its own purposes upon substitution of other of equal value. Sexton v. Kessler & Co., 225 U.S. 90, 32 S.Ct. 657, 56 L.Ed. 995; In re Bernard & Katz, 38 F.(2d) 40 (C.C.A.2); Burrowes v. Nimocks, 35 F.(2d) 152 (C.C.A.4). So may he collect accounts receivable and instead of remitting them may make cash payments for the equivalent. Manufacturers Finance Co. v. Armstrong, supra. In Parker v. Meyer, 37 F.(2d) 556 (C.C.A.4), the assignor, as provided by the agreement, was to collect installments due on leases and conditional sale contracts and could mingle them with his own funds without accountability except that every 60 days the loan was to be diminished by the amounts collected. The pledge was held valid.

■ Here the debtor was subject to restrictions. Funds collected by way of principal and interest were to be kept in separate accounts; monthly statements were to be made accompanied by remittances of principal; collections of interest were then to be withdrawn from the separate accounts and used by the pledgor but only "so long as there shall not exist an event of default." The dominion over interest payments, conditioned upon the absence of default and circumscribed by provisions as to collections, keeping, and accountability, did not invalidate the pledge. Cf. President & Directors of Manhattan Co. v. Prudence Co., 266 N.Y. 202, 207, 194 N.E. 408. Benedict v. Ratner, supra, presented an altogether different situation, since the pledgor had uncontrolled dominion over the pledge res. In effect nothing certain had been given or had passed to the pledgee. Here the collateral was in the possession of the pledgee. It could at any time make collections and enforce payment of the obligations; principal collections were remitted; interest collections alone were withdrawn by the pledgor. Even this right terminated in the event of a default, as it did on March 31, 1933. Thereafter collections of interest were remitted to the appellee by the debtor and by the trustees in bankruptcy until March 1, 1935, when the claim was made that the pledge was invalid. Though the mere fact that the right of disposition is terminable on an event does not validate an otherwise invalid pledge (Benedict v. Ratner, supra), the condition of termination here serves to emphasize the restricted character of the dominion which was reserved to the pledgor. The lien is valid and the order directing payment of the interest is affirmed.

■ The amortization payments upon the mortgage above referred to aggregating $77,687.35 represent amounts due and payable under the mortgage on January 1, 1933, July 1, 1933, and $17,687.35 of the payment due January 1, 1934. The debtor received these payments which are now in the hands of the trustees. On April 19, 1932, an ownership agreement was entered into between the debtor and Amalgamated Properties, Inc., a wholly owned subsidiary, whereby the mortgage here considered was

split into a senior and junior participation, the former of $2,100,000 and the latter of $170,000. The debtor took the senior interest. It is admitted that the purpose of this agreement was to facilitate the assignment of this senior interest to the appellee on August 20, 1932. The junior interest was thereafter reassigned to the debtor. In the ownership agreement, it was provided that the senior interest was to be "superior * * * as if the party held a first mortgage." The owner thereof was authorized to accept payment of this mortgage and to execute proper satisfaction therefor, except that it was to account to the junior interest for any excess over the senior interest. The assignment of the senior participation to the appellee was made subject to the terms of this agreement. The appellee thus acquired what was referred to in the note and loan agreements as a "prior interest" to the extent of $2,100,000. The question is whether this priority carried with it the right to amortization payments under the mortgage.

The appellants contend that the ownership agreement leaves the right to amortization payments undetermined and that the information sheet submitted by the debtor to the appellee in applying for the loan covers this. In the information sheet, the terms of payment under the mortgage were specified to be: "$10,000 on January 1, 1935; $30,000 on July 1, 1935, and semiannually thereafter * * *." In so far as this statement purported to schedule the actual payments due under the mortgage, it was patently erroneous for, in fact, payments of $30,000 were to begin on January 1, 1932, and were to be made semiannually thereafter until July 1, 1940. If it merely purported to represent the terms upon which the collateral was being offered to the appellee, it is impossible to accept it as a final understanding between the parties and as an agreement by the appellee that the amortization payments should first be applied in discharge of the junior participation. The appellee's board of directors expressly rejected the information sheet insofar as it scheduled the proposed collateral. Moreover, by the assignment and the ownership agreement which it incorporated, the appellee was granted an unqualified prior interest similar in all respects to the grant of a first mortgage. No reference to the information sheet or to its schedule of payment is to be found in the assignment. From the prior and much larger interest of the appellee and from the explicit terms

of the ownership agreement, the right to amortization payments must necessarily be implied. Cf. Lowenfeld v. Wimple, 139 App.Div. 617, 619, 124 N.Y.S. 178, affirmed 203 N.Y. 646, 97 N.E. 1108.

Reference is made to a statement by the assistant manager of the appellee's New York loan agency and to other conduct by the appellee which are said to indicate an acquiescence in the application of the payments to the junior participation. But at most there was error or inadvertence which in no way misled or prejudiced the debtor or the appellants, and it is therefore without significance. Brainard v. New York Central R. Co., 242 N.Y. 125, 151 N. E. 152, 45 A.L.R. 751. Nor can we agree that by such conduct the unqualified terms of the assignment and ownership agreement were in any way changed or modified. Hopwood Plays, Inc., v. Kemper, 263 N.Y. 380, 189 N.E. 461.

Orders affirmed.