### In re NEW YORK, N. H. & H. R. CO.
### No. 16562.

District Court, D. Connecticut.
Feb. 25, 1938.

W. W. Meyer, of New Haven, Conn. (J. H. Gardner, Jr., of New Haven, Conn., of counsel), for trustees of the principal debtor.

Raymond E. Hackett, of Stamford, Conn., and Frederick S. Fisher and Winthrop H. Kellogg, both of New York City, for Reconstruction Finance Corporation.

White & Case, by Fitzhugh McGrew, and Carlos L. Israels, all of New York City, and Wiggin & Dana by John Q. Tilson, Jr., of New Haven, Conn., for Bankers Trust Co.

Davis, Polk, Wardwell, Gardiner & Reed by Malcolm Fooshee, of New York City, for insurance group.

Watrous, Hewitt, Gumbart & Corbin by Morris Tyler, of New Haven, Conn., for City Bank Farmers Trust Co.

HINCKS, District Judge.

Upon the issues as originally framed upon this petition, under date of June 16, 1937, I entered a Memorandum of Decision wherein I indicated my final ruling with respect to several items of the controversy therein involved. But with respect to the so-called "assignment of the Grand Central advances" I held only that this court had jurisdiction in summary proceedings to determine these issues. Feeling that these issues had not been properly raised by the original petition, I instructed the debtor's trustees to file an appropriate amendment to the petition. This was done. All the parties interested have pursuant to order of court filed their answers to the petition thus amended, and The Reconstruction Finance Corporation (hereinafter referred to as "Reconstruction"), reserving its objection and noting its exception to the ruling sustaining summary jurisdiction in the court, has replied to the answers thus filed. Thereafter the parties had opportunity to expand the record of fact and filed a stipulation to which all the parties pleading to the amended petition adhered.

Facts

On October 23, 1935 the New Haven filed its petition for reorganization in these proceedings. Long prior thereto the New Haven and the New York Central, which between them had complete control of much real estate in the Grand Central area in New York City, agreed to embark upon a joint enterprise for the improvement of said real estate for their joint advantage. In pursuance of this enterprise they entered into an agreement with a third party, hereinafter called the obligor, whereby the obligor agreed to develop and manage the property and the two railroads agreed in equal shares to advance certain capital to be used by the obligor either for the development of the property or for the amortization of the obligor's indebtedness incurred in such development; all under an arrangement whereby the obligor agreed to pay interest upon all such advances and to reimburse the railroads therefor, the reimbursement for advances used for development purposes to be made unconditionally according to stated schedules and the reimbursement for advances used for the amortization of the obligor's indebtedness to be made from income from the property in excess of certain stated carrying charges against the property.

Pursuant to these agreements, the New Haven made advances to the obligor both for development and amortization, for which as of September 30, 1934, it had a right to be reimbursed in the aggregate amount of $7,903,047.05, its said right with respect to advances for development being absolute and with respect to advances for

amortization being conditioned upon the receipt of income to the obligor from specific property as aforesaid.

On October 1, 1934, the Interstate Commerce Commission, having found that the public interest did not then demand a financial reorganization of the debtor within the meaning of Sec. 15 of the Emergency Railroad Transportation Act of 1933, 49 U.S.C. A. § 265, approved a loan by Reconstruction to the debtor of $6,000,000 to be advanced in installments upon receipt of satisfactory collateral. When the debtor was unable to furnish satisfactory collateral whereby to obtain the final installment of said loan, it thereupon offered to assign as additional security all its right to be reimbursed for the Grand Central advances described above. This offer was accepted by Reconstruction and approved by the Interstate Commerce Commission. Accordingly, under date of December 22, 1934, the debtor executed and delivered to Reconstruction a written instrument under seal whereby it purported to assign to Reconstruction as additional security for the loan aforesaid all its right, title and interest pertaining to its said advances aggregating $7,903,047.05, it being "expressly understood and agreed by the corporation (i.e., Reconstruction) by the acceptance of this assignment, that so long as the New Haven Company shall not be in default in respect of said loans, the New Haven Company may · collect, receive and retain all moneys due and to become due to it under said agreements." The New York Central and the obligor assented in writing to the foregoing assignment.

Thereafter the debtor and subsequently the trustees appointed upon its estate collected and received moneys due it from the obligor under the agreements aforesaid, using the same to its and their own purposes with the knowledge of Reconstruction, but without asking or receiving its approval or consent, until March 12, 1936, when Reconstruction notified the obligor and the New York Central of their liability for any further payments made on account of principal or interest on the assigned advances. Since that time all payments due from the obligor have been withheld pending the termination of this controversy.

## Discussion

■ On the foregoing facts several groups of creditors and mortgage trustees who have pleaded to the petition herein contend that the assignment of December, 1934, is wholly void and ineffective under the doctrine of Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991. It is not disputed, however, that under the facts the applicable law is that of the State of New York. Nor is it disputed that the right assigned under the instrument of December 22, 1934 was in part conditional and in part absolute and wholly arose out of valid and· enforceable contracts then in existence.

■ The right involved, i.e., the right to be reimbursed for the advances theretofore made, was conditional in that it depended in part upon the accrual of income to the obligor in excess of certain stated carrying charges. The right was also a future right in the sense that it was expected to mature in the future under a contract already in existence. But the right was not incapable of effective assignment because it was a future right or a conditional right. A.L.I. Restatement of the Law of Contracts, (hereinafter referred to as the "restatement") Secs. 150, 154 and 155; Field v. Mayor of New York, 6 N. Y. 179, 57 Am.Dec. 435; Hinkle Iron Co. v. Kohn, 229 N.Y. 179, 128 N.E. 113. And no one seems to question the validity of the assignment on this ground.

■ The assignment, as distinguished from the right assigned, was also conditional; indeed, it was subject to two independent conditions. In the first place, it was intended to have effect only as security for the principal indebtedness. But the presence of such a condition does not destroy the effectiveness of the assignment. Restatement, Sec. 150. Indeed, no one contends that the assignment here involved was invalid because designed for security only. See Niles v. Mathusa, 162 N.Y. 546, 57 N.E. 184.

But here the assignment is subject to a second condition, viz., the event of default upon the underlying principal obligation from the New Haven (the assignor) to Reconstruction (the assignee). For by the terms of the assignment, only in the event of such a default is the assignee entitled to collect from the obligor.

■■ However, "an assignment is not ineffective because it is conditional." Restatement, Sec. 150. Indeed, normally in the assignment of an executory or bilateral contract the obligation of the obligor is conditioned upon the performance originally promised by the assignor. Yet the inherent presence of such a condition does not destroy the effectiveness of the assignment (Restatement, Sec. 161) in cases not

falling within the exceptions noted in the Restatement, Sec. 160. Nor is the law of New York at variance with these broad principles. Duffield v. Johnson, 96 N.Y. 369; Prindle v. Caruthers, 15 N.Y. 425; Hooker v. Eagle Bank, 30 N.Y. 83, 86 Am. Dec. 351; Everson v. Gere, 122 N.Y. 290, 25 N.E. 492; Devlin v. Mayor, 63 N.Y. 8; Rochester Lantern Co. v. Stiles & Parker Press Co., 135 N.Y. 209, 31 N.E. 1018; Rosenthal P. Co. v. National Folding Box & Paper Co., 226 N.Y. 313, 123 N.E. 766; Grossi v. Rialto Security Corp., 273 N.Y. 403, 7 N.E.2d 836.

To be sure, most of the cases above cited happen not to frame a contest between an assignee and a bankrupt estate. But since, in the absence of actual fraud, an absolute assignment of an unilateral obligation (see Coates v. First National Bank, 91 N.Y. 20) and the assignment of an executory bilateral obligation with its inherent conditions are good as against creditors and trustees in bankruptcy, one can only conclude that under the common law the conditional assignment of an unilateral obligation is equally effective, assuming of course the happening of the condition. See Matter of Title & Mortgage Guaranty Company, 275 N.Y. 347, 9 N.E.2d 957, 115 A.L.R. 35. Thus testing the transaction by the fundamentals of the law, it appears that the instrument of December, 1934 was wholly valid and effective notwithstanding the institution of these proceedings some ten months later.

The facts involved in the Benedict v. Ratner Case must be distinguished. There, as Justice Brandeis pointed out, irrespective of default upon the principal of the loan the assignee was entitled to enforce the assignment, but until he did so the assignor was entitled to collect from the obligor without obligation to account to the assignee. Thus the assignment was not subject to a definitely stated condition. Moreover, there the assignment was "secret," from which I infer that the obligors there involved were without notice of the assignment. Obviously, such an assignment was neither "a fractional part of a single and entire right against an obligor" nor "of a stated amount from such right" so as to constitute an operative partial assignment within the purview of the Restatement. See Sec. 156. Indeed, its terms were scarcely such as to manifest an "intention to transfer, without further action or manifestation of intention, the right" there involved. Thus viewed, perhaps the Ratner

Case meant only that the transaction there under consideration was not an "assignment" at all within the true meaning of that term. Restatement, Sec. 149. Indeed, in Re Prudence Co., 2 Cir., 88 F.2d 420, it was said of this case that [page 422] "In effect nothing certain had been given or had passed to the pledgee."

Certainly it is extending the Benedict v. Ratner rule to apply it to a case such as this where the transaction was approved in advance by a public authority, was consented to by the obligor and, most important of all, limited the rights reserved to the assignor to those maturing before the happening of a definitely stated event.

It is urged upon me that the case of Guinzburg v. D. A. Schulte, Inc., 2 Cir., 91 F.2d 733, is conclusive upon the facts existing here. But in that case, so far as appears, the assignment was neither assented to or even known by the obligors (subtenants). Under such circumstances, the payment by the obligors to the assignor (the debtor sublessor) might have discharged their obligation. Restatement, Sec. 170. However, since failure to notify an obligor of an assignment seems not to destroy the right of an assignee, it may be doubted that the absence of such notice is important here. Williams v. Ingersoll, 89 N.Y. 508. More important for purposes of distinction is the fact that in the Guinzburg Case the assignment related to a bilateral contract (a lease) and covered not merely the rent accruing on the sub-leases but rather extended to "any and all subleases" then or thereafter made. Such an assignment was doubtless interpreted to include not only the assignor's rights but also "a delegation of the performance of the assignor's duties." Restatement, Sec.164(1). Under the circumstances of that case it well may have been that the court considered that Guinzburg (landlord under the main lease) never accepted the assignment so as to become bound to perform the assignor's duties thereunder. Restatement, Sec. 164(2). If so, when bankruptcy intervened Guinzburg's rights under the assignment were dependent upon the performance of his assignor's duties, and Guinzburg, though perhaps privileged to perform these duties, was under obligation to no one so to do. Restatement, Sec. 160. Thus Guinzburg, when he laid claim to the sub-rents accrued prior to bankruptcy, was in effect claiming an assigned right which was conditioned upon the performance of a correlative duty, without performing that duty.

Thus considered the Guinzburg Case may have application only to the assignee of a bilateral contract, executory at least in part. And so applied it may mean only that such an assignee, who fails to render the performance upon which the obligor's promise is conditioned, is in no position as against his assignor to enjoy the right assigned. To be sure, one cannot with assurance impute such a rationale to the Guinzburg decision. But on the other hand, that holding, carried as it is in a per curiam decision, contains no sure indication that it is applicable to a case such as this wherein the right assigned from the standpoint of the obligor is wholly unilateral—depending not in the least upon performance by any other party.

And so I conclude that neither the Ratner Case nor the Guinzburg Case show that on the facts here involved the assignment falls within any exception to the general rule that an assignment of a right flowing from a unilateral contract is not invalid because subject to a definitely stated condition.

The other cases cited against this assignment may also be distinguished on their facts. In Walradt v. Miller, 2 Cir., 45 F.2d 686, the facts were well within the Ratner holding in that the real agreement between the parties as found by the court contained no definite condition to the assignment but contemplated only that the assignor might collect from the obligors for an indefinite period. In Re Borok, 2 Cir., 50 F.2d 75, the agreement apparently purported to be an unconditional assignment for purposes of security but also provided that the assignor might collect without accountability until the maturity of the notes evidencing the principal indebtedness. And when the first note went to protest it was renewed under such circumstances as to indicate a complete absence of intent that upon a default in payment of principal the assignment should become absolute. The obligors apparently never had notice of the purported assignment, and if such notice had been given the terms of the agreement and the subsequent conduct of the parties would have left the obligors completely at a loss to know to whom at any given time they should make payment. In Lee v. State Bank & Trust Co., 2 Cir., 54 F.2d 518, 519, 85 A.L.R. 216, "the validity of the assignments turns upon the practice of the pledgor and pledgee with respect to goods returned by customers whose accounts had been assigned." The court was dealing with chattels claimed to be pledged and the decision rests upon the law of personal property rather than upon the law of contract. And again in Irving Trust Co. v. Finance Service Co., 2 Cir., 63 F.2d 694, the agreement seems not to have contained a definitely stated condition. There the court says that the parties "in fact intended to reserve to the [assignor] the jus disponendi." [page 695.] Here no intent can be found to reserve beyond the happening of the stated condition the "jus disponendi" or the "dominion."

On the other hand, In re Prudence Co., 2 Cir., 88 F.2d 420, so far as it goes, tends to support the validity of the assignment here involved. The court, to be sure, suggests a distinction between conditional assignments of income and similar assignments of the "res." But it holds only that the conditional assignment of income was valid; not that conditional assignment of the res was invalid. And in Re McCrory Stores Corp., 2 Cir., 73 F.2d 270, the lessee agreed that the lessor should have a lien upon all future sub-rents. This agreement the court construed as intended to apply only to sub-rents accruing after default in the payment of rent upon the head lease. Thus construed, it was conceded that the landlord's claim for sub-rents accrued after bankruptcy and collected by the lessee's trustee in bankruptcy belonged to the landlord, notwithstanding the trustee's contention (which the court sustained) that sub-rents previously accrued belonged to the debtor's general estate. The decision does not question the holding of the court below that a lien subject to an event of default is valid after the event. And no sound reason occurs for invalidating an assignment designed to accomplish the same effect.

I hold, therefore, that under the law of New York as under the common law generally the assignment in question is valid and effective according to its terms.

The record, however, does not clearly indicate the date upon which the debtor first fell into default with respect to the loans secured by the assignment. The point seems not to have been covered by the briefs. I will therefore refrain from making a finding upon this phase of the controversy until I have the aid of argument. That subject-matter may be deemed included in the final hearing to be held upon the amended petition, as well as all controversy relating to the disposition of

interest accrued upon the assigned advances.

In order to expedite a final order, I will now assign the amended petition for final hearing on March 11, 1938, at 11.00 A. M. at New Haven, the hearing to include all undecided items of controversy whatsoever as well as the form of a final order appropriate for entry.