### J. R. SNEEDEN ET AL. v. NURNBERGER'S MARKET.

(Filed 3 November, 1926.)

**1. Chattel Mortgages—Definition—Choses in Action.**

A chattel mortgage is a conditional transfer of the property pledged, vesting the title in the mortgagee absolutely in law upon condition broken, and as against purchasers and creditors must be registered. C. S., 3311.

**2. Debtor and Creditor—Pledges of Personal Property—Possession.**

A mere pledge of personalty for the payment of a debt, as distinguished from a chattel mortgage, passes the actual or constructive possession in the pledgee, or at most, a special property in the pledge with a right of retainer by the pledgee until the debt is paid.

**3. Same—Principal and Agent.**

Where the pledgee of personal property delivers the possession to the pledgor for the purpose of selling it and applying the proceeds to the payment of the debt, the pledgee is in constructive possession of the thing pledged under the principal of agency.

**4. Same.**

Where the pledgee has assigned to him certain book accounts and other choses in action to be collected by the pledgor and paid to him in the event of the latter's failure to pay for supplies weekly furnished by the former in certain amounts as to value, and permits the pledgor to mingle the moneys thus collected with his general funds until condition broken, whether the written instrument containing this contract of sale be recorded as an unregistered chattel mortgage or mere pledge : *Held*, it is invalid as a preference against the general creditors of the pledgee.

APPEAL by Swift & Company, intervening petitioner, from *Midyette, J.,* at April Term, 1926, of NEW HANOVER.

The plaintiffs brought suit on behalf of themselves and all other creditors of the defendant for the collection of $253.34, and the appointment of a receiver of the defendant's business. Trial by jury was waived and the trial judge found the facts.

On 7 October, 1924, the defendant in writing assigned to Swift & Company all its book debts, accounts, and choses in action then due or to become due from designated customers of the defendant, together with a trust receipt, and received from Swift & Company a letter interpreting the receipt. The defendant's total indebtedness is approximately $10,000; the amount due Swift & Company is $2,594.85; and the total amount for distribution is about $1,300.

The receiver contended on the hearing that the assignment to Swift & Company constituted a preference under C. S., 1611, or if not, then a mortgage, and was invalid because not registered as required by section 3311.

It was adjudged that the intervening petitioner, Swift & Company, had a valid unsecured claim against the defendant for $2,594.85, but no lien or preference upon the assigned accounts, and that the proceeds from the collection of the accounts are general assets in the hands of the receiver.

Swift & Company excepted and appealed.

*Rountree & Carr* for appellant.
*Bellamy & Bellamy* for receiver.

ADAMS, J. On 7 October, 1924, the defendant executed a written instrument by which it assigned and transferred to Swift & Company all the accounts and choses in action then due it by its customers or at any time thereafter to become due, and authorized the assignee to collect the respective sums as they matured, the assignment being "continuing security" for the defendant's present and prospective indebtedness to the assignee. The defendant then executed a "trust receipt" acknowledging possession of the assigned papers for the purpose of collection and remittance to Swift & Company, who at the same time wrote and delivered to the defendant a letter purporting to interpret the receipt just given. These three papers bear the same date and constitute one transaction. Neither of them was registered; and it was held by the trial court that the unregistered assignment was not enforceable against the defendant's general creditors. C. S., 3311.

This conclusion was no doubt based on the theory that the papers in question constitute a chattel mortgage of choses in action, as contended by the creditors; but the appellant argues that the papers constitute a pledge to secure a preëxisting debt.

In construing particular statutes, some of the courts have held that a chose in action is not the subject of a chattel mortgage, but in the absence of statutory restrictions, the general rule seems to be otherwise. 11 C. J., 433, sec. 43. While it is not necessary now to decide the question, we refer to *Wallston v. Braswell,* 54 N. C., 137, in which it was observed that no provision had been made in reference to the counties in which a deed of trust on choses in action should be registered, and to the clause relating to the subject in the amended statute. C. S., 3311.

While a debt may be secured by a mortgage or by a pledge of personal property, between a mortgage and a pledge there is a recognized and approved distinction. The former is a conditional transfer or conveyance of the property itself; and if the condition is not performed, the title vests absolutely *at law* in the mortgagee; the latter passes the possession of the property, or at most a special property in the pledge, with a right of retainer until the debt is paid. *Doak v. Bank,* 28 N. C., 309; *Ball-Thrash v. McCormick,* 162 N. C., 471.

To make a valid pledge, the pledgee's actual or constructive possession of the article is essential and as a rule restoration of possession to the pledgor is inconsistent with the pledge. The principle is treated in *Barrett v. Cole,* 49 N. C., 40. There one Due, being indebted to the plaintiff, delivered to him a horse as security for a debt and immediately the possession was restored to Due. The horse was sold by an officer under process against Due at the instance of the defendant Tyson, who was the plaintiff in the execution. The Court said: "The contract between Due and the plaintiff, by which the horse in question was delivered to the latter, for the purpose of securing a debt which Due owed him, was undoubtedly intended by the parties as a security for money, and must have been either a mortgage or a pledge. If it were a mortgage, it was clearly void as against creditors, because not in writing, and proved and registered within six months as required by law. Rev. Stat., ch. 37, sec. 23; (Rev. Code, ch. 37, sec. 22). If it were a pawn or pledge, we think that it was equally void as against the creditors, because the possession, instead of being retained by the pawnee, was immediately restored to the pawnor."

To the same effect are *Smith v. Sasser,* 49 N. C., 43, and *Owens v. Kinsey,* 52 N. C., 245. In *Bodenhammer v. Newsom,* 50 N. C., 107, it is said: "The only difference between the facts of that case *(Smith v. Sasser)* and the present is the length of time during which the pawnor had the article in possession, after a redelivery by the pawnee, before he sold it. But that cannot make any difference in the rule of law applicable to the transaction. By giving up the possession of the article pawned, the pawnee lost his lien, and it would be a fraud upon an innocent purchaser from the pawnor if the pawnee were permitted to recover the pawn from him."

But to this general rule there are exceptions; one is, that the pledgee may redeliver the property to the pledgor for the purpose of having it sold for the benefit of the pledgee. So it was held in *Rose v. Coble,* 61 N. C., 517: "It is true that to the validity of a pledge it is necessary that there should be a delivery to the pledgee, and that his possession should continue, and that the pledge is lost by giving the pledgor the control of it. But the fact that the pledgee authorized the pledgor, as his agent, to take the mare to Greensboro to try to sell her to raise money to pay the debt for which she was pledged, does not contravene that rule, because the possession of the agent was the possession of the principal."

If it be conceded for the purpose of argument that the three papers taken together make a pledge, does it appear therein that the appellant appointed the defendant its agent within the scope of the principle just stated?

In the appellant's letter purporting to interpret the "trust receipt" was an instruction that the defendant need not keep the trust funds

arising from collections on the assigned accounts separate from its own funds so long as the defendant paid Swift & Company $150 each week. Conditioned upon making this payment, the defendant was to have credit with the company in the sum of $250 a week, and was to keep the "trust fund" separate from its own only in the event it should make default in its payments.

It is useless to deny that the trust receipt and the letter of interpretation are much more than the creation of a bare agency for the collection of the accounts. Such a course of business is utterly inconsistent with the idea that the defendant retained the accounts only for the purpose of collecting them as the pledgee's agent. The market was to continue its business under a secret trust agreement with the appellant. What means of information had the defendant's creditors as to the actual relation existing between the contracting parties? Would they have extended credit with knowledge of this relation? The object of the rule in reference to the pledgee's retaining possession is to prevent the pledgor from inducing the belief that he is the owner of the pledge. This object was defeated by a device, whatever the intention of the parties may have been. The pledgee consented to the intermixture of pledged with unpledged funds and did not retain the sole possession of the assigned accounts, or in any event did not retain such possession as is required to reserve the pledgee's lien.

So, whether the contract be construed as a mortgage or a pledge, the result is the same. If a mortgage, it was voidable as to the defendant's creditors because it was not registered; it was not enforceable as a pledge because the lien was not maintained. *Quacunque via,* the judgment must be affirmed. *Moors v. Reading,* 167 Mass., 322, 57 A. S. R., 460; *Casey v. Cavarock,* 96 U. S., 467, 24 L. Ed., 779.

Affirmed.