## MANUFACTURERS FINANCE CO. v. ARMSTRONG et al.

### No. 3849.

Circuit Court of Appeals, Fourth Circuit.

June 3, 1935.

Hunter M. Jones, of Charlotte, N. C. (John M. Robinson, of Charlotte, N. C., on the brief), for appellant.

Joseph C. Whisnant, of Shelby, N. C. (Ryburn & Hoey, of Shelby, N. C., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and MEEKINS, District Judge.

PARKER, Circuit Judge.

This is an appeal from an order in the bankruptcy proceedings of the Gastonia Thread Yarn Mills, Inc., denying the petition of the Manufacturers Finance Company which asked that a lien be declared in its favor on certain assets in the hands

of the trustees in bankruptcy. The bankrupt had entered into a contract for the borrowing of money from the finance company and the assignment of accounts as security therefor. Among the accounts so assigned were two accounts of the Fremont Thread Company and one of the Union Thread Company upon which the bankrupt subsequently received trade acceptances in the sum of $3,824.22, $1,924.64, and $840.63 respectively. The bankrupt sent the finance company its check in the sum of $12,253.60 in payment for these and other acceptances received on assigned accounts; but this check, to the extent of $2,715.78, was paid from moneys derived from the discount of other acceptances received on accounts which also had been assigned to the finance company. It is the contention of the finance company that to the extent of this $2,715.78 there has been no payment for the acceptances for which the $12,253.60 check was given, and that it is entitled to a lien for this amount on the three acceptances heretofore mentioned, or their proceeds, in the hands of the trustees in bankruptcy. The contention of the trustees is that the finance company has been paid for the acceptances in question and that, irrespective of this, it had no lien on the acceptances by reason of its having surrendered unfettered dominion over them to the bankrupt.

The contract between the bankrupt and the finance company provided for the assignment of accounts by the former, for which the finance company was to pay in full, less certain commissions and charges which were provided for. Accounts were to be collected at the office of the bankrupt, but were to be assigned in writing to the finance company, and entries showing the transfer were to be made immediately upon bankrupt's books to which auditors of the finance company were to have full access. It was provided that all "original checks, drafts, notes and other evidences of payment received in payment, or on account" of any account purchased by the finance company should be delivered to it at its office in Baltimore. It was alleged and admitted, however, that, as a convenient means of collecting for the finance company, trade acceptances and other evidences of indebtedness received in payment of assigned accounts were retained by the bankrupt, which listed same and sent to the finance company a list of such acceptances and other evidences of indebtedness together with a check in payment therefor. Other than this, it does not appear what dominion was given the bankrupt over assigned accounts, except that it is stipulated that trade acceptances for which check in settlement was sent to the finance company on July 2, 1934, were discounted with a bank by the bankrupt on June 26, 1934.

The claim of lien for the sum of $2,715.78 rests upon the following facts: On June 25, 1934, the bankrupt sent to the finance company its check for $12,253.60 in settlement for certain trade acceptances, including the acceptances of the Fremont Thread Company and the Union Thread Company, to which we have referred. This check was paid on June 28, 1934, by the bank on which it was drawn, but $2,715.78 of the funds used in paying it represented proceeds of the discount of other acceptances received in payment of assigned accounts for which a check, subsequently dishonored, was sent in settlement on July 2d. The acceptances of the Fremont Thread Company and the Union Thread Company had been pledged as security to a note given by the bankrupt, but this note was paid by an offset of a deposit account and the acceptances thereupon came into the hands of the trustees in bankruptcy.

■ If it be assumed that the finance company had a lien on the acceptances involved in this transaction, i. e., upon those for which the check of July 2d was given in payment as well as upon those covered by the $12,253.06 check of June 25th, it is clearly entitled to the lien which it claims upon the acceptances of the Fremont Thread Company and the Union Thread Company or their proceeds. It is well settled that, in the absence of special agreement to the contrary, a check is payment only in the event that it is itself paid. Cleve v. Craven Chemical Co. (C. C. A. 4th) 18 F.(2d) 711, 712, 52 A. L. R. 980; Little v. Mangum (C. C. A. 4th) 17 F.(2d) 44, 45; Philadelphia Life Ins. Co. v. Hayworth (C. C. A. 4th) 296 F. 339, 343; 48 C. J. 617. And upon nonpayment, the person accepting it is remitted to his original rights. Cleve v. Craven Chemical Co., supra; Pflueger v. Lewis Foundry & Machine Co. (C. C. A. 6th) 134 F. 28, 36. When, therefore, the check of July 2d was dishonored, the finance company became entitled to the acceptances for which that check had been given. In re Perpall (C.

C. A. 2d) 256 F. 758, 759; Nat. Bank of Commerce v. Chicago, etc., R. Co., 44 Minn. 224, 46 N. W. 342, 560, 9 L. R. A. 263, 20 Am. St. Rep. 566.

As the acceptances for which the check of July 2d was given had been pledged to a bona fide holder to secure a loan of funds, it is clear that the finance company was equitably entitled to a lien upon the proceeds of the loan if these could be traced. $2,715.78 of these proceeds was traced into the payment of the $12,253.06 check of June 25th, and to that extent there was a failure of payment of that check; for "delivery to a creditor of his own money or property cannot be regarded as a payment, although accepted as such by him, in ignorance of the facts." 48 C. J. 587. The acceptances for which the check of June 25th was given, therefore, were not paid for to the extent of $2,715.-78, and should be subjected to a lien for that amount, or, what is the same thing, should be charged with a lien on the theory that funds in that amount belonging to the finance company have been traced into them. The fact that bankruptcy has intervened does not prevent the enforcement of a lien for the amount of the funds so diverted, where they have been thus traced into a specific fund or into specific property which has come into the hands of the trustees in bankruptcy. See Collier on Bankruptcy (13th Ed.) vol. 2, pages 1681 to 1686 and cases cited; Schumacher v. Harriett (C. C. A. 4th) 52 F.(2d) 817, 82 A. L. R. 1; Tucker v. Newcomb (C. C. A. 4th) 67 F.(2d) 177; In re A. Bolognesi & Co. (C. C. A. 2d) 254 F. 770.

We come then to the crucial question in the case, i. e., whether the finance company had any right to or lien upon the acceptances received by the bankrupt in payment of assigned accounts, or whether the bankrupt had been accorded such unfettered dominion over collections as was inconsistent with the existence of such lien. The contract provided that the accounts purchased by the finance company were to be assigned to it in writing, and that such assignment was to be noted upon the books of the company. It provided, also, that all checks, notes, acceptances, etc., received in payment of accounts assigned should be immediately transferred and delivered to the finance company at its office in Baltimore. There can be no question, therefore, but that, if the contract as written had been strictly complied with, the lien of the finance company on the assigned accounts and the proceeds of the collection thereof would have been preserved. Bundy v. Commercial Credit Co., 202 N. C. 604, 163 S. E. 676; Chapman v. Emerson (C. C. A. 4th) 8 F.(2d) 353; Parker v. Meyer (C. C. A. 4th) 37 F.(2d) 556; McCluer v. Heim-Overly Realty Co. (C. C. A. 8th) 71 F.(2d) 100, 103. And we do not think that this lien was forfeited, if all that was done was to permit the bankrupt to retain notes and acceptances upon making immediate payment therefor in cash to the finance company. Under the contract, the bankrupt held such notes and acceptances as agent for the finance company and was charged with the duty of delivering them to that company at once; and we do not think that the right of the finance company in the paper so held by the bankrupt was lost because of an attempted cash sale to the bankrupt which failed because of the dishonor of the check used in payment. As pointed out in Bundy v. Commercial Credit Co., supra, the lien of the assignee is not forfeited where notes pledged are delivered to the pledgor for collection; and, a fortiori, no forfeiture should be declared where all that is contemplated is a cash sale to the bankrupt of acceptances which the bankrupt has received as agent for immediate delivery to the finance company. It is expressly held that the transfer is not invalidated by reason of the fact that the transferor is permitted to substitute other collateral in lieu of that for which lien is given. Burrowes v. Nimocks (C. C. A. 4th) 35 F.(2d) 152, 158; Sexton v. Kessler & Co., 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995; In re Bernard & Katz (C. C. A. 2d) 38 F.(2d) 40, 41. And certainly there is less reason for holding the transfer invalid when the transferor is permitted to use the security only upon making immediate cash payment for same. And in such case, where the check used as a medium of effecting payment has been dishonored, there is no reason why the finance company should not be allowed to reclaim the acceptances for which the check has been given, or, if they have been negotiated, have a lien declared upon their proceeds if these can be traced.

It follows that upon the record before us the decree in favor of the trustees was not warranted. We are not certain, however, that such decree will not be warrant-

ed by a fuller disclosure of the facts. It appears that the bankrupt pledged the acceptances for which the check of July 2d was given six days before the giving of that check. While this circumstance alone is not sufficient to show that the bankrupt had been accorded unfettered dominion over the accounts and the funds collected from them, it suggests that this may have been the fact, and that such fact may be established on the further hearing of the cause. If it should be established, the finance company would be shown to have had no lien upon the acceptances for which the check of July 2d was given, and would have no rights with respect to the acceptances of the Fremont Thread Company and the Union Thread Company as a result of tracing trust funds or otherwise. The rule applicable in such cases is laid down in Sneeden v. Nurnberger's Market, 192 N. C. 439, 135 S. E. 328; Benedict v. Ratner, 268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 691; Union Trust Co. v. Peck (C. C. A. 4th) 16 F.(2d) 986; Irving Trust Co. v. Finance Service Co. (C. C. A. 2d) 63 F.(2d) 694; Walradt v. Miller (C. C. A. 2d) 45 F.(2d) 686; Lee v. State Bank & Trust Co. (C. C. A. 2d) 38 F.(2d) 45. While the rights of the parties depend primarily upon the law of North Carolina, the rule applicable has not been better stated than by the Supreme Court of the United States in Benedict v. Ratner, supra, 268 U. S. 353, at page 359, 45 S. Ct. 566, 569, 69 L. Ed. 691, where it is said: "The results which flow from reserving dominion inconsistent with the effective disposition of title must be the same whatever the nature of the property transferred. The doctrine which imputes fraud where full dominion is reserved must apply to assignments of accounts although the doctrine of ostensible ownership does not. There must also be the same distinction as to degrees of dominion. Thus, although an agreement that the assignor of accounts shall collect them and pay the proceeds to the assignee will not invalidate the assignment which it accompanies, the assignment must be deemed fraudulent in law if it is agreed that the assignor may use the proceeds as he sees fit."

For the reasons stated, the decree appealed from will be reversed, and the cause will be remanded for further proceedings in accordance with this opinion.

Reversed and remanded.