In re STEELE et al.
No. 2785.

United States District Court
E. D. North Carolina,
Raleigh Division.
June 2, 1954.

Jane A. Parker, Asst. U. S. Atty., Smithfield, N. C., for petitioner for review.

Winborne & Winborne, Raleigh, N. C., for respondent.

GILLIAM, District Judge.

An order has been entered by Mr. Joseph B. Cheshire, Jr., Referee, upon his decision that Louis Watch Company, Inc., of New York City, is entitled to receive as a secured creditor the amount of $2,900 which has been collected by the trustee on certain open accounts upon which the Watch Company claims to hold a mortgage; the United States, a creditor of the bankrupt, has attacked this order and its petition for review and other pertinent official documents have been certified to me by the Referee.

The claim of the Watch Company arises upon a chattel mortgage, duly recorded on June 6, 1950, in Wake County, North Carolina, residence of the members of the bankrupt partnership, dated May 25, 1950. This mortgage secures an indebtedness of $17,500, "maturing in weekly installments in the sum agreed between the parties or as established by the execution of notes or other evidence of debt", or "any extension or renewal of the same", and "any other indebtedness now due or hereafter owing"; and for such purpose "bargains, sells, delivers, assigns and transfers * * * all of the accounts receivable * * * being all of the accounts receivable or presently held due and payable (to the bankrupts) * * * in the following towns in North Carolina, to-wit: Goldsboro, Smithfield, Selma, Kinston, Norlina, La Grange, Ayden, Rocky Mount, Greenville, Warrenton, and Henderson"; the mortgage further recites: "It is specifically understood and agreed * * that this mortgage shall cover all of the present accounts receivable in said towns named above, and that it shall apply to and attach against any other accounts receivable which may become due and owing (to the bankrupts) in said towns and cities"; it provides that "in case of default * * * in payment of this debt or any installment or interest then the remaining balance of any debt shall immediately become due * * *"; and that in event of default the Watch Company "may sell said property * * at public auction for cash * * *." It should be noted that the mortgage contains no provision requiring remittance by the mortgagor or collections as made.

The claim of the Watch Company is in the amount of $3,971.35 and the Referee has found that of $6,883.23 collected by the trustee on accounts receivable, $2,900 was collected on accounts due by customers doing business in the towns referred to in the security instrument, and that ninety percent of these accounts were contracted after its date.

These findings are not attacked. The attack is based on the contention that the mortgage is void and affords the Watch Company no security or priority.

By stipulation these further facts appear:

A part of the consideration for the execution of the instrument to Louis Watch Company was the assumption by Capital Sales Company of an existing debt in the amount of $7,317 owed by United Novelty Company to Louis Watch Company; that the remaining consideration was the amount of $10,-183, which represented money due Louis Watch Company by Capital Sales Company on account of goods sold and delivered, part of which had not been received at the time of the execution of the instrument.

The trustee in bankruptcy was able to identify the accounts set forth in the instrument.

Of the $2,900 collected from the towns named in the instrument ninety percent (90%) was collected on accounts which arose after May 25, 1950, the date of the execution of the instrument.

Ten percent (10%) of the claim of Louis Watch Company for $3,971.35 was based on the original $17,500 recited in the instrument, that ninety percent (90%) of said claim was for later advances.

Practically none of the $2,900 collected by the trustee represents accounts due C. B. Davis, trading as United Novelty Company, which were assigned by Davis to Steele and Sutter.

Capital Sales Company was solvent on May 25, 1950.

There was no set agreement or standard course of action between Capital Sales Company and Louis Watch Company with reference to collection of the accounts involved and the handling of the proceeds; that the proceeds were not turned over to Louis Watch Company as collected; that such reports as were made by Capital Sales Company to Louis Watch Company on accounts collected were informal reports and were not periodical.

The instrument was not executed with intent to hinder, delay or defraud creditors of Capital Sales Company.

On May 25, 1950, Capital Sales Company had no creditors that have not since been paid, with the exception of the United States Government.

It is unknown whether or not Capital Sales Company had sufficient property, other than the accounts involved herein, to pay such other creditors in full at that time. However, reference is made to Stipulation set out in the preceding paragraph.

The property covered by the instrument in question was not all, or substantially all of Capital Sales Company's property on May 25, 1950.

First, I will consider whether accounts receivable are subject to chattel mortgage in North Carolina. The Government insists that, while they may be assigned under General Statutes of North Carolina, Sections 44–77, subsection (1), and 44–78(4), they may not, at least since enactment of these statutes, be mortgaged. If this position is sound, the Watch Company has no security, since the North Carolina Assignment of Accounts Receivable Act, enacted in 1945, G.S. §§ 44–77 through 44–85 was not followed.

The general rule is that, in the absence of statutory restrictions, choses in action may be mortgaged. 10 Am.Jur., Chattel Mortgages, Sec. 24. Not only is there no statutory restriction in this State, but the North Carolina Statute, G.S. § 47–20, specifies where such instruments shall be recorded. In Sneeden v. Nurnberger's Market, 1926, 192 N.C. 439, 135 S.E. 328, our Court reserved the question, but the implications are clearly contrary to the Government's position. The Court discussed the question whether a security instrument covering book debts, accounts and choses in action was a valid chattel mortgage or pledge. The same

question was considered in Bundy v. Commercial Credit Co., 1932, 202 N.C. 604, 163 S.E. 676, involving a transfer of notes and accounts receivable. In neither of these cases is there a suggestion that choses in action can not be mortgaged, as well as pledged or assigned.

██ Granting that a chattel mortgage of choses in action was valid prior to the Assignment of Accounts Receivable Act, does that law provide an exclusive method of giving security by mortgage, pledge or assignment of choses in action? In my opinion it does not. The North Carolina law, like that of several other states, provides a convenient method for protecting assignments of accounts by filing a notice of assignment in the office of the Register of Deeds. The notice need not describe the accounts, but must state that the assignor has assigned or intends to assign one or more accounts to the assignee during the period specified. "Account" or "account receivable" is defined by the law and includes only a presently subsisting right to the payment of money. The Act provides that: "The assignment of accounts receivable may be protected by the filing of a statement to be known as a 'notice of assignment' * * *." It seems clear that a transfer or assignment of accounts receivable in connection with sales by a going concern is outside the scope of the law. Likewise, no compelling reason appears from the language of the Act for the conclusion that accounts receivable, either present or future, may not be mortgaged by a properly executed and recorded instrument. Indeed, Section 6 speaks of the debtor in good faith paying all or any part of an assigned account to the assignor, or "other person holding a lien upon, or interest or right in or to such account * * *."

 If present accounts receivable may be mortgaged, may future accounts also be included? At common law a chattel mortgage on property not in existence was invalid, but equity recognized and enforced the lien, and North

Carolina has applied this equitable doctrine liberally. Hickson Lumber Co. v. Gay Lumber Co., 150 N.C., 282, 288, 63 S.E. 1045, 1048, 51 L.R.A.,N.S. 843: "In North Carolina a mortgage upon after-required property, being enforceable inter partes, becomes, upon registration, valid and enforceable against subsequent purchasers, because the registration is an effectual notice as against the world."

The North Carolina case closest in point is Sneeden v. Nurnberger's Market, above cited. An assignment of accounts due and to become due, but which was not recorded, was held invalid as a chattel mortgage because unrecorded, and as a pledge because the debtor was left in possession and control of the accounts but not as agent of the creditor. The clear implication seems to me to be that had the assignment been in proper form as a chattel mortgage and duly recorded, it would have been valid both as to accounts presently due and those accruing after its execution.

██ In view of the fact that ninety percent (90%) of the amount now due the Watch Company is for advances made under the mortgage after the date of its execution, there arises the question whether security given for future advances is enforceable. The provision in the mortgage specifically gives security as to any indebtedness "now due or hereafter owing from the (mortgagor) to said Louis Watch Co., Inc." Security may be given for future advances under North Carolina law. State v. Surles, 117 N.C. 720, 23 S.E. 324. Womble v. Leach, 83 N.C. 84. In the absence of fraud or bad faith, mortgages to secure future advances are valid. 10 Am.Jur., Chattel Mortgages, Sec. 40.

In view of the intimations in former cases and in the absence of a determination by the North Carolina Court, it appears to me that the mortgage in question is good unless outlawed by the decision of the Supreme Court of the United States in Benedict v. Ratner, 268 U. S. 353, 45 S.Ct. 566, 69 L.Ed. 991. There the Court said that an assignment

of present and future accounts receivable as security for debt was fraudulent and void against creditors, where the assignor collected the accounts and used the proceeds as it saw fit, without being required to apply collections on the debt, account to the assignee for them, or replace accounts collected with other collateral. The basis of the rule as stated was the reservation by the transferor of dominion inconsistent with the effective disposition of title and creation of a lien. As the holding was not made to rest upon lack of notice to other creditors, the rule would have been applied, I believe, even if the assignment had been duly recorded, as was the chattel mortgage in this case. I have found no North Carolina case, either citing Benedict v. Ratner or applying its rule to an assignment, pledge or mortgage of accounts receivable. The facts in Sneeden v. Nurnberger's Market, above, are, it is true, somewhat similar to those in Benedict v. Ratner, but our Court, in declaring the assignment invalid, did not adopt the Benedict v. Ratner repugnancy theory; and put its decision on the ground that the assignment was secret, not being recorded, and for this reason was fraudulent as to creditors. The intimation was, as above stated, that the assignment, if recorded, would have been good. Of course, under the repugnancy concept, it would have been invalid even if recorded.

◼ While the North Carolina Court has not expressly adopted the Benedict v. Ratner rule, the Court of Appeals of this Circuit has applied it in several cases. One of these, Manufacturers Finance Co. v. Armstrong, 4 Cir., 78 F.2d 289, arose in North Carolina. There, although the case was remanded for additional findings, the Court approved Benedict v. Ratner. Judge Parker stated the question involved in this manner, 78 F.2d at page 291: "We come then to the crucial question in the case, i. e., whether the finance company had any right to or lien upon the acceptances received by the bankrupt in payment of assigned accounts, or whether the bank-

rupt had been accorded such unfettered dominion over collections as was inconsistent with the existence of such lien." On page 292 of 78 F.2d the opinion goes on: "The rule applicable in such cases is laid down in Sneeden v. Nurnberger's Market, 192 N.C. 439, 135 S.E. 328; Benedict v. Ratner, 268 U.S. 353, 45 S. Ct. 566, 69 L.Ed. 991. * * * While the rights of the parties depend primarily upon the law of North Carolina, the rule applicable has not been better stated than by the Supreme Court of the United States in Benedict v. Ratner where it is said: 'The results which flow from reserving dominion inconsistent with the effective disposition of title must be the same whatever the nature of the property transferred. The doctrine which imputes fraud where full dominion is reserved must apply to assignments of accounts although the doctrine of ostensible ownership does not. There must also be the same distinction as to degrees of dominion. Thus, although an agreement that the assignor of accounts shall collect them and pay the proceeds to the assignee will not invalidate the assignment which it accompanies, the assignment must be deemed fraudulent in law if it is agreed that the assignor may use the proceeds as he sees fit' ".

◼ In my opinion, the doctrine of Benedict v. Ratner is sound and should be applied in this case. It is recognized that since the Erie Railroad case (Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188) this Court must follow the North Carolina decisions, but in the absence of such is permitted to declare its own opinion of such law. The intimations of our State Supreme Court in former cases mentioned do not persuade me that that Court would not adopt the Benedict v. Ratner decision in a case with similar facts.

◼ The mortgage here, as before mentioned, contains no provision requiring remittances of collections by the mortgagor as made, and it appears by stipulation that there was no contemporaneous oral agreement to such effect, no such course of action between the

parties, that proceeds were not turned over to the Watch Company as collected, and no periodical reports of collections on accounts. Therefore, the full dominion which was held to invalidate in Benedict v. Ratner, Manufacturers Finance Co. v. Armstrong, and many other cases, was reserved to the mortgagor. In effect, it was agreed that the mortgagor might use the proceeds of collections on the accounts as he saw fit. So that, in my opinion, the mortgage was fraudulent in law and the order of the Referee is reversed to this extent; and the cause is remanded to the Referee for further proceedings.