HARRISON L. WINTER, Chief Judge:
Angeles Real Estate Co. (Angeles) sued the trustee of the bankruptcy estate of Construction General, Inc. (CGI) seeking to reclaim funds from the estate. The bankruptcy court and the district court both rejected Angeles’ claim, holding that it was a mere creditor whose only remedy lay in its share of the eventual distribution of assets to CGI’s general creditors. Angeles appealed and we reverse.
I.
The funds in dispute are the proceeds of a note that a third party paid to CGI. One-half those proceeds had been assigned to Angeles’ predecessor by CGI’s predecessor as payment for a prior debt. Under the assignment, CGI’s predecessor was to collect the proceeds and pay Angeles’ predecessor its half within seven days after payment by the debtor.
Despite the assignment, when CGI collected the note in January, 1979, it did not convey any of the proceeds to Angeles. Instead, CGI used the money to pay its antecedent debt to the American Bank of Maryland. After CGI was adjudicated a bankrupt in May, 1979, the trustee recovered the payment to the bank because it amounted to an illegal preference. The question we must decide is whether, under these circumstances, Angeles is the owner of one-half the proceeds of the note recovered by the trustee, or merely a general creditor.
II.
A trustee in bankruptcy stands in the shoes of the bankrupt and succeeds only to the bankrupt’s interest in property. If the bankrupt’s title in property is limited, the trustee receives no greater interest. Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); In re Cross Electric, 664 F.2d 1218 (4 Cir.1981). Furthermore, the Bankruptcy Act specifies that the trustee’s rights and powers regarding property in the bankruptcy estate are equivalent, inter alia, to those of a judgment lien creditor. 11 U.S.C. § 544(a); 4 Collier on Bankruptcy § 544.02 (15th Ed.). Thus, if under applicable state law a judgment lien creditor would prevail over an adverse claimant, the trustee in bankruptcy will prevail; if not, he will not. Id. See also Jaffke v. Dunham, 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1956). As both parties agree, Maryland law is the applicable state law in this case.
Angeles contends that these principles dictate that the bankruptcy court should order the trustee to turn over to it one-half the proceeds of the note. The assignment, it maintains, passed legal title to half the proceeds. Angeles’ interest, therefore, is superior to that of the trustee, who merely succeeds to the bankrupt’s interest. And, under Maryland law, a prior specific lien is superior to the general lien of a judgment creditor. Garner v. Union *419 Trust Co., 185 Md. 386, 45 A.2d 106 (1945). As we discuss hereafter, we agree with this analysis.
To defeat this logic, the trustee responds with the contention that Angeles, which did not record the assignment document, has only an unperfected security interest and that such an interest would be inferior to a judgment lien creditor’s under applicable Maryland law. This argument assumes, however, that Angeles’ interest is a mere security interest, defined by the Maryland Code as “an interest in personal property or fixtures which secures payment or performance of an obligation.” Ann.Code of Md., Commercial Law § 1-201. But this is not the case. Angeles’ interest in the note and its proceeds represents payment of a debt, not simply security for the payment. See In re Langerstrom, 300 F.Supp. 538 (S.D. Ill., 1969) (because a client had no intent to create an Article 9 security interest when he assigned his tax refund to his attorney as payment for services, there was no requirement that the assignment be recorded). Accordingly, Angeles’ failure to record or otherwise to perfect its interest does not affect its claim on the property.
The trustee also contends that, unlike an assignment of the entire interest in a chose-in-action, a partial assignment does not create a legal interest in the assignee unless the debtor consents to the assignment. He cites Brown Shoe Co. v. Carns, 65 F.2d 294 (8 Cir.), cert. denied, 290 U.S. 695, 54 S.Ct. 130, 78 L.Ed. 598 (1933), which indicated that this was the general common law rule in 1933. It also was the Maryland rule in 1890. See Harris v. Mayor & City Council of Baltimore, 73 Md. 22, 39, 20 A. 111 (1890).
No Maryland court has since considered this issue, but we think that the Maryland court would not apply this venerable decision to the facts of this case. First, the rationale for the Harris rule was protection of the obligor, not the assignor. The Harris court was concerned about subjecting debtors to the demands of two different creditors instead of one. Id. at 39, 20 A. 111. Here there is no question of prejudicing the obligor on the note.
Second, the Maryland court has adopted the Restatement of Contracts in other contexts. See, e.g., Penowa Coal Sales Co. v. Gibbs & Co., 199 Md. 114, 85 A.2d 464 (1952). We think it fair to assume that Maryland now would subscribe to § 326 of the Restatement (Second) of Contracts, which provides that “assignment of a part of a right ... is operative as to that part to the same extent and in the same manner as if the part had been a separate right.”
Under this reading of Maryland law, then, a legal interest in one-half the note’s proceeds passed to Angeles under the assignment. The trustee has stipulated that CGI used the actual funds collected on the note to pay the bank. It follows that recovery of the preference was a recovery of those same funds. In these circumstances, Angeles is entitled to its half of the funds, for Maryland law dictates that a prior specific lien is superior to the general lien of a judgment creditor. Garner.
III.
As an alternative ground of decision, we think that, even if the' partial assignment did not vest a legal interest in Angeles under Maryland law, Maryland would recognize an equitable lien in Angeles’ favor. Although no Maryland court has addressed the issue, under general common law principles, a partial assignment creates an equitable lien in favor of the assignee. See National Surety Co. v. County Bd. of Educ., 15 F.2d 993, 995, (4 Cir.1926). In fact, under general common law principles, an equitable lien or equitable assignment arises whenever a debtor makes a specific appropriation of part of a specific fund to a creditor — when, in other words, the debtor relinquishes control of the part he promises to pay to his creditor. See, e.g., Union Trust Co. of Md. v. Town- *420 shend, 101 F.2d 903 (4 Cir.1939); Tobin v. Insurance Agency Co., 80 F.2d 241 (8 Cir. 1935). Furthermore, Maryland recognizes equitable liens and holds that the controlling question is whether the parties intended to create a lien. Equitable Trust Co. v. Imbesi, 287 Md. 249, 412 A.2d 96 (1980). Here, the most reasonable construction of the agreement is that the parties intended that the assignee obtain a charge or lien upon half the proceeds of the promissory note. Angeles, the assignee, after all, demanded and received more than a mere promise to pay from those proceeds. It received an assignment of a one-half interest.
The trustee objects that CGI did not surrender dominion of the proceeds because it was free to do whatever it wanted with them during the first seven days after receiving them. But we do not deem the right to hold funds up to seven days to be a reservation of unfettered dominion or control.
Citing Collier on Bankruptcy, the trustee also argues that no equitable lien or assignment can be superior to the trustee’s interest unless the claimant can identify or trace the funds so charged. As we noted above, the trustee stipulated that CGI used the note’s proceeds to pay the American Bank of Maryland. Recovery of the preference thus was a recovery of the proceeds. See Mgrs. Finance Co. v. Armstrong, 78 F.2d 289, 291 (4 Cir.1935).
Finally, the trustee contends that § 60(a)(6) of the Bankruptcy Act, 11 U.S.C. § 96, evidences “Congressional disfavor of equitable liens.” That section, however, addresses equitable liens arising because the creditor failed to meet the perfection requirements for legal liens. As we explained above, no perfection requirements apply to this assignment; it does not establish a security interest. Further, as the Ninth Circuit held in In re Destro, 675 F.2d 1037, 1040 (9 Cir.1982), § 60 is concerned with preferences, and the policy it articulates regarding equitable liens has, by the terms of the section, no application beyond the preference context. Accordingly, we reject the trustee’s objections and conclude that an equitable lien arose in Angeles’ favor on the facts of this case. Thus, Angeles may recover from the trustee under this theory, because a judgment lien creditor in Maryland takes subject to equitable charges against the debtor. Eastern Shore Bldg. & Loan Corp. v. Bank of Somerset, 253 Md. 525, 253 A.2d 367, 370 (1969).
IV.
In sum, we conclude that the Maryland courts would recognize either a legal or an equitable interest in Angeles’ favor under the circumstances of this case. Accordingly, Angeles’ claim to its assigned share of the proceeds is superior to the claim of the trustee. The trustee occupies the position of a judgment lien creditor, 11 U.S.C. § 544(a), and Maryland law thus subordinates his interest to either a prior legal interest, Garner, or a prior equitable one, Eastern Shore Bldg. & Loan Cory. Because of these conclusions, we do not reach the question on which the decisions of the bankruptcy court and the district court turned — whether a constructive thrust arose in plaintiff’s favor under Maryland law.
REVERSED.