POLLAK, District Judge,
dissenting.
I.
I agree with the majority that we possess jurisdiction over the defendants’ appeal, and that we possess jurisdiction over the issues raised in the plaintiffs’ cross-appeal to the extent those issues were included in the certified order of the District Court. However, like the District Court, I do not believe Congress intended to permit state Medicaid agencies, such as the Pennsylvania Department of Public Welfare (“DPW”), to impose liens on judgments and settlements obtained by Medicaid beneficiaries from third parties.[1] I therefore respectfully dissent.
II.
A.
As a condition of participating in Medicaid, states must prepare a state Medicaid plan to comply with various requirements set out in the Social Security Act. See generally 42 U.S.C. § 1396a. As relevant here, a state Medicaid plan must permit the state to seek “reimbursement” when third parties are liable for medical services provided by Medicaid. Specifically, the plan must provide:
(A) that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties ... to pay for care and services available under the plan, including
(i) the collection of sufficient information ... to enable the State to pursue claims against such third parties, ...
(ii) the submission to the Secretary of a plan (subject to approval by the Secretary) for pursuing claims against such third parties ...;
(B) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability;....
Id. § 1396a(a)(25)(A)-(B) (emphasis added) (“reimbursement” provision).
A state’s Medicaid plan must also require individuals enrolled in Medicaid to assign to the state their right to payment for medical care from third parties, and to cooperate with the state’s efforts to recover those payments. In relevant part, this “assignment/cooperation” provision states that:
*380 (a) For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this subchapter, a State plan for medical assistance shall
(1) provide that, as a condition of eligibility for medical assistance under the State plan to an individual who has the legal capacity to execute an assignment for himself, the individual is required
(A) to assign the State any rights ... to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party;
(B) to cooperate with the State ... in obtaining support and payments (described in subparagraph (A)) for himself ...; and
(C) to cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party who may be liable to pay for care and services available under the plan.
(b) Such part of any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed ... and the remainder of such amount collected shall be paid to such individual.
Id. § 1396k(a)-(b) (emphasis added).[2]
In addition to the reimbursement and assignmeni/cooperation provisions, the Social Security Act contains an “anti-lien” provision, which states that:
No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan, except
(A) pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual, or
(B) in the case of the real property of an individual [when the individual is an inpatient in a medical institution, is required to spend her own income as a condition of receiving services in the institution, and is unlikely to ever be discharged from the institution and to return home].
Id. at § 1396p(a)(l). The Act also contains an “anti-recovery” provision, which states that “[n]o adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except [in limited circumstances not at issue in this case].” Id. at § 1396p(b)(l).
To comply with the foregoing provisions of the Social Security Act, Pennsylvania has enacted 62 Pa. Stat. Ann. § 1404(b), *381 which provides that the “acceptance of medical assistance benefits shall operate as an assignment to the [DPW], by operation of law, of the assistance recipient’s rights to recover ... payment for medical care from any third party.” Pennsylvania has also enacted 62 Pa. Stat. Ann. § 1409, which governs third party liability in the context of Medicaid. Under Section 1409, when Medicaid benefits are provided to a beneficiary because of an injury for which a third-party (including an insurer) is liable, both the DPW and the beneficiary may bring an independent cause of action against the third-party. If the DPW institutes suit, it has “the right to recover from such person or insurer the reasonable value of benefits so provided.” Id. § 1409(b)(1). If a beneficiary brings an action against a liable third party, the beneficiary may, if he so desires, “include as part of his claim the amount of [Medicaid] benefits that have been or will be provided” by the DPW. Id. § 1409(b)(5)(vi).
If the beneficiary institutes an action against such a third party, the beneficiary must notify the DPW of the suit within thirty days, id. § 1409(b)(5), and the DPW may intervene in the suit at any time before trial, id. § 1409(b)(5)(v). However, the DPW is not required to intervene in a beneficiary’s suit, and may instead wait until the suit has proceeded to a judgment or settlement. In such cases, the resulting judgment or settlement must first be used to pay the reasonable litigation expenses and attorneys’ fees incurred by the beneficiary. Id. § 1409.1(b)(1). Then, in cases that proceed to a judgment, “the court or agency shall allocate the judgment or award between the medical portion and other damages,” and the DPW may assert a “lien against the medical portion of the judgment or award,” in “the amount of the expenditures for the benefit of the beneficiary” made by the DPW. Id.[3] In cases that settle, and which therefore lack a judicial allocation of damages, the DPW may impose a lien upon the settlement to recover its medical expenditures in an amount not exceeding “one-half of the beneficiary’s recovery after deducting for attorney’s fees, litigation costs, and medical expenses relating to the injury paid for by the beneficiary.” Id. § 1409(b)(ll).
B.
The majority concludes that the various provisions of the Social Security Act set forth in the preceding section should be construed to permit state Medicaid agencies, such as the DPW, to impose liens on future judgments and settlements obtained by Medicaid beneficiaries from third parties. The majority opinion derives much of its force from its argument that this construction prevents Medicaid recipients from obtaining windfall recoveries, because “[i]t defies common sense to conclude that Congress intended to protect the rights of Medicaid beneficiaries to recover medical costs that they never paid in the first place.” Op. at 374.
I disagree with the majority opinion’s construction of the Social Security Act for three primary reasons. First, the opinion ignores language in the reimbursement and assignment/cooperation provisions which indicates that Congress intended states to directly litigate claims against liable third parties. Second, the opinion erroneously concludes that because Congress intended to create a limited implicit exception to the anti-recovery provision, this court must read an even broader im *382 plied exception into the anti-recovery provision and an additional implied exception into the anti-lien provision. Third, the opinion fails to recognize that § 1409(b)(5)(vi), which allows a Medicaid beneficiary to “include as part of his claim [against a third party] the amount of benefits that have been or will be provided” by the DPW, is preempted by the Social Security Act.
The last of these three reasons deserves particular emphasis: because § 1409(b)(5)(vi) is preempted by the plain language of the Social Security Act, Medicaid beneficiaries will not be able to obtain windfall recoveries. As a result, it is not necessary to devise textually tenuous implicit exceptions in order to read the Act in a way that prevents such recoveries.
1.
Turning to the first reason, the District Court held that the reimbursement and assignment/cooperation provisions, taken together, indicate that Congress did not intend to permit state Medicaid agencies to free-ride on the efforts of plaintiffs by asserting hens after a judgment or settlement has been obtained. Rather, Congress wanted states to either initiate suit against or intervene in actions against liable third parties, and wanted Medicaid recipients to cooperate in those efforts by providing state agencies with any information they might require. As the District Court explained: *383 Tristani v. Richman, 609 F.Supp.2d 423, 469 (W.D.Pa.2009) (emphasis in original) (citations omitted).[4]
*382 Section 1396a(a)(25)(A)(i)-(ii) requires a state plan for medical assistance to take all reasonable measures to provide for “the collection of sufficient information (as specified by the Secretary in regulations) to enable the State to pursue claims against ... third parties,” and to further provide for “the submission to the Secretary of a plan (subject to approval by the Secretary) for pursuing claims against such third parties.” This statutory language unambiguously refers to direct actions by state entities against liable third parties. Section 1396a(a)(25)(B) requires a state to “seek reimbursement” from liable third parties for the cost of medical assistance provided to an individual “in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the cost of such recovery.” The plain language of this statutory provision reveals that Congress believed that participating states would not only pursue liable third parties directly, but that they would also incur costs in seeking to recover their expenditures.
Under § 1396k(a)(l)(C), a state plan for medical assistance must provide that, as a condition of eligibility for medical assistance, an “individual is required ... to cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party who may be liable to pay for care and services available under the plan.” This statutory language indicates that Congress expected participating states to need assistance in pursuing liable third parties. The reimbursement provision contained in § 1396k(b) likewise evinces a legislative intent that state entities directly pursue liable third parties. That provision requires a state entity which has collected money under an assignment to retain only those proceeds necessary to reimburse it and the federal government for the cost of a given Medicaid recipient’s medical care, and to pay the remainder of the money to the recipient. The reimbursement provision envisions an active role in litigation by state entities, not the passive role played by the DPW in the cases involving Tristani and Valenta.
*383 The majority opinion rejects the District Court’s conclusion that states may only seek reimbursement for care and services provided by Medicaid by bringing their own lawsuits against third parties or by intervening in suits brought by Medicaid recipients, suggesting that § 1396a(a)(25)(B) “is silent regarding the method by which reimbursement must be sought” by the state. Op. at 370. This statement is, in a strict sense, accurate: § 1396a(a)(25)(B) does not itself specify whether the state must seek reimbursement directly from third parties.
However, like the Supreme Court, “[w]e do not ... construe statutory phrases in isolation; we read statutes as a whole.” United States v. Morton, 467 U.S. 822, 828, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984); see also United Sav. Assn, of Tex. v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (“A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme.... ”). The majority opinion does not quote or otherwise address the immediately preceding subsection, which indicates that Congress wanted “the State to pursue claims against such third parties.” 42 U.S.C. § 1396a(a)(25)(A) (emphasis added). The opinion also ignores § 1396k(a)(l)(C), which states that individuals must provide information “to assist the State in pursuing” liable third parties. And it does not *384 address § 1396k(b), which envisions that the state will seek reimbursement for medical assistance payments directly from a liable third party, and will pay any “remainder” (i.e., amount recovered in excess of the state’s medical expenditures) to the individual Medicaid recipient.[5] Thus, the majority errs by ignoring language in the reimbursement and assignment/cooperation provisions indicating that Congress wants states to initiate or intervene in lawsuits against third parties.
2.
My second reason for disagreement with the majority opinion arises from its construction of the anti-lien and anti-recovery provisions. The District Court found that the anti-lien and anti-recovery provisions can be rendered consistent with Section 1396a(a)(25), the reimbursement provision, and Section 1396k, the assignmentycooperation provision, by construing the latter provisions “to require an assignment for the purpose of enabling a participating state to directly pursue claims against third parties liable for the costs of providing medical assistance to Medicaid recipients.” Tristani, 609 F.Supp.2d at 470. The majority opinion rejects this construction on the ground that “the District Court’s conclusion that Pennsylvania must intervene in tort actions filed by Medicaid beneficiaries cannot be reconciled with the anti-recovery provision” because “[b]y its terms, the anti-recovery provision limits the ability of states to recover medical assistance payments made on behalf of Medicaid beneficiaries, regardless of the specific method.” Op. at 370.
I agree with the majority that the anti-recovery provision would, if read in isolation, seem to prohibit the state from using any method from seeking to recover medical assistance payments expended on behalf of Medicaid recipients. From this, it follows that the reimbursement and assignment/eooperation provisions, which expressly state that states must pursue assigned claims directly against third parties, must constitute an implicit exception to the anti-recovery provision permitting states to recover from liable third parties.
However, it does not follow that the reimbursement and assignment/cooperation provisions create an exception to the anti-recovery provision permitting states to recover from Medicaid beneficiaries. Nor does it follow that the reimbursement and assignment/eooperation provisions must be read to impliedly repeal the anti-lien provision. See 42 U.S.C. § 1396p(a)(l) (“No lien may be imposed against the property of any individual ... on account of medical assistance paid ... under the State plan.... ” (emphasis added)).[6] Our precedents recognize that “ ‘[rjepeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and *385 manifest.’ ” Hagan v. Rogers, 570 F.3d 146, 154-55 (3d Cir.2009) (quoting National Ass’n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 662, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007)).[7] Nowhere in the majority opinion’s extended discussion of the various amendments to and the legislative history of the reimbursement and assignment/eooperation provisions does the majority point to any “clear and manifest” Congressional intent to create an implicit exception to the anti-lien provision or to permit recoveries directly from Medicaid beneficiaries.[8] Such exceptions are not required by the language of the former provisions, which, as explained above, suggest on their face that Congress wanted states to directly initiate or intervene in lawsuits against third parties. As the District Court recognized, the anti-lien provision can best be reconciled with the reimbursement and the assignment/eooperation provisions by construing the latter according to their plain meaning.
In short, while a limited implied exception must be read into the anti-recovery provision to permit recoveries from liable third parties, that fact alone does not require — much less justify — reading an even broader implied exception into the anti-recovery provision or an additional implied exception into the anti-lien provision. Accordingly, I would affirm the District Court’s holding that “[t]o the extent that sections 1409(b)(7)(i) and 1409.1(b)(1) permit the DPW to impose liens on the awards obtained by Medicaid recipients from liable third parties during the lifetimes of the recipients, they are preempted by § 1396p(a)(l) [the anti-lien provision].” Tristani 609 F.Supp.2d at 473. In addition, to the extent that sections 1409(b)(7)(i) and 1409.1(b)(1) permit the DPW to seek recoveries of “medical assistance correctly paid” from Medicaid beneficiaries’ settlements and judgments, rather than directly from third parties, they are preempted by § 1396p(b)(l), the anti-recovery provision.[9]
*386 3.
I would go a step further than the District Court, and also hold that § 1409(b)(5)(vi) — which permits a Medicaid beneficiary suing a third-party to “include as part of his claim the amount of [Medicaid] benefits that have been or will be provided” by the DPW — conflicts with the Social Security Act and is therefore preempted. As discussed above, the reimbursement and assignment/cooperation provisions indicate that Congress wanted state agencies to pursue claims against third parties for reimbursement of Medicaid expenditures, and imposed upon individual Medicaid recipients only the obligation that they cooperate with state agencies by providing them with any information necessary to pursue their claims. See 42 U.S.C. § 1396a(a)(25)(A)(i) (requiring state plan to provide for “the collection of sufficient information ... to enable the State to pursue claims against ... third parties” (emphasis added)); id. § 1396k(a)(l)(C) (requiring state plan to direct individuals to “cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party who may be liable to pay for care and services available under the plan” (emphasis added)).
The natural reading of these provisions is that Congress wanted the states, and the states alone, to be able to pursue claims against third parties for reimbursement of Medicaid expenditures. Congress did not intend to authorize Medicaid recipients to include in their suits claims that properly belong to the states. Such a reading of the Social Security Act would, because of the anti-lien and anti-recovery provisions discussed above, permit Medicaid recipients to obtain a windfall reeovery — which, as the majority recognizes, is an absurd result that Congress cannot have intended. Thus, I would hold that § 1409(b)(5)(vi) is also preempted by the third party liability provisions of the Social Security Act.
I come to this conclusion notwithstanding the fact that neither party to this litigation has argued that § 1409(b)(5)(vi) is preempted. The parties’ positions are perhaps unsurprising, because both have self-interested reasons for seeking to rely upon this provision of Pennsylvania law: the plaintiffs hope to recover (or keep their recoveries of) Medicaid expenditures from third parties, and then shield themselves from the DPW using the anti-lien and anti-recovery provisions, while the DPW hopes to free-ride on the efforts of plaintiffs and their counsel in order to avoid the expenses of actually litigating claims against third parties. The parties, of course, are entitled to their litigation positions, but the judiciary’s duty is to “say what the law is.” Marburg v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). Because § 1409(b)(5)(vi) permits Medicaid recipients to assert claims belonging to the DPW, and is therefore the underlying source of the difficulties in this case, I would reach the question of whether it is preempted, and would answer that question in the affirmative.
III.
The construction of the Social Security Act defended in this dissent remains faithful to the plain language of the Act, while also eliminating the possibility that Medicaid recipients will be able to obtain wind *387 fall recoveries. For the reasons outlined above, I respectfully dissent.

. As the majority recognizes, the Supreme Court's decision in Arkansas Department of Health and Human Services v. Ahlborn, 547 U.S. 268, 280 n. 9, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006), assumed without deciding that "a State can ... requirfe] an 'assignment' of part of, or plac[e] a lien on, the settlement that a Medicaid recipient procures on her own.” After making this assumption, the Court cited to §§ 1396k(a)(l)(B)-(C) with a ''cf.” signal, noting in a parenthesis that under those provisions a Medicaid “recipient has a duty to identify liable third parties and to providfe] information to assist the State in pursuing' those parties.” Id. (emphasis and alteration in original). As will be discussed below, the language emphasized by the Court undercuts the majority’s construction of the Social Security Act.

. Similarly, a state’s Medicaid plan must ensure that the state has in place a legal framework by which the state acquires the right to payment from third parties for medical expenditures made by Medicaid. That is, the plan must provide:
that to the extent that payment has been made under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, the State has in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services....
Id. § 1396a(a)(25)(H).

. As the majority notes, see Op. at 368 n. 8, Pennsylvania enacted the judicial allocation provision in § 1409.1 to comply with the Supreme Court’s decision in Ahlbom, which held that a state Medicaid agency may not seek "payment for anything other than medical expenses.” 547 U.S. at 281, 126 S.Ct. 1752.

. I recognize that the construction of the Social Security Act defended in this opinion would, by requiring the DPW to litigate claims itself, render it cost-prohibitive for the DPW to pursue certain claims. However, as the District Court noted, the reimbursement provision explicitly recognizes that there will be circumstances under which it will be too expensive for states to recover from third parties, and exempts states from any obligation to pursue claims in such circumstances. See 42 U.S.C. § 1396a(a)(25)(B) (“in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability” (emphasis added)).
In addition, it should be noted that other public policy concerns aside from efficiency are at issue in this case, notably the attorney-client relationship. Pursuant to § 1409(b)(5)(vi), a plaintiff may pursue claims against third parties for Medicaid expenditures made by the DPW. If her case settles, then the DPW is entitled to recover its medical expenditures in an amount of up to one-half of the beneficiary’s recovery after deducting for attorney's fees and litigation expenses, regardless of how a court would have actually allocated the plaintiff’s medical and non-medical damages. Id. § 1409(b)(ll). As a result of this essentially arbitrary default rule, a plaintiff whose medical damages were relatively small in comparison to her non-medical damages is likely to be under-compensated by the settlement (which was made in light of the risks that always attend going to trial), while the DPW will be over-compensated (because the DPW does not have to factor such risks into its recovery). If the plaintiff wishes to challenge this default allocation, she must pursue a potentially expensive administrative appeal. See 55 Pa.Code § 259.2(d).
The plaintiff’s attorney, however, is in a quite different position. Because the attorney’s fees are deducted before the DPW takes its cut of the settlement, the attorney will always be fully compensated for her efforts. Thus, under Pennsylvania’s statutory scheme, the plaintiff's attorney has an incentive to include the plaintiff’s Medicaid damages in the complaint — which is likely to increase the amount of time the attorney will spend on the case and therefore her fees — even if that would not be advantageous for her client. While I am confident that most attorneys in Pennsylvania would (like plaintiffs’ counsel in this action) do what is in the best interests of their clients regardless of what is in their own best interests, I nonetheless suspect that Congress did not intend to create such temptations.

. This last provision is particularly noteworthy: By providing for payment by the state Medicaid agency to the beneficiary of any remainder, § 13961c(b) indicates that Congress was aware of the problem that a state’s lawsuit against a liable third party might obtain an excessive recovery. It is striking, then, that Congress did not include a similar provision to address the situation of excessive recovery by Medicaid beneficiaries.

. I agree with the District Court that, under the reasoning of Ahlbom, the liens imposed by the DPW upon beneficiaries’ recoveries of Medicaid expenditures from third parties are "imposed on their ‘property’ for purposes of the anti-lien provision.” Tristani, 609 F.Supp.2d at 472; see also id. ("[T]he mere fact that the DPW needed to assert liens in the first place indicates that the liens were imposed on the 'property' of [plaintiffs].”); Ahlborn, 547 U.S. at 286, 126 S.Ct. 1752 ("Why, after all, would ADHS need a lien on its own property?”).

. The earliest versions of the anti-lien and anti-recovery provisions date to 1960, when they were first incorporated into the Social Security Act. Op. at 370-71. The earliest versions of the reimbursement and assignment/cooperation provisions were first enacted in 1967 and 1977, respectively. Id. at 372, 373. As the majority recognizes, the anti-lien and anti-recovery provisions have “undergone numerous amendments” clarifying and in some cases expanding the circumstances under which states may seek to recover from Medicaid beneficiaries. Id. at 371-72 n. 12. Despite these many amendments, Congress has never added an express exception to the anti-lien provision permitting state Medicaid agencies to impose liens upon judgments and settlements obtained by beneficiaries against third parties.

. Indeed, the one piece of legislative history quoted by the majority — a statement by a single senator during a committee hearing — does not use the word “lien” or otherwise suggest that recoveries may be made directly from Medicaid beneficiaries. Op. at 373 (quoting Social Security Amendments of 1967: Hearing Before the S. Comm. On Finance, 90th Cong. 1572 (1967) (statement of Wallace M. Smith)). Far from evincing a clear intention to permit the use of liens by states agencies, the statement by Senator Smith evinces only a more general intent to reduce "wasteful” double recoveries by beneficiaries — a goal accomplished by requiring states to initiate or intervene in suits against third parties. Id.

.The majority also notes that under traditional "common law principles, a partial assignment creates an equitable lien of favor of the assignee,” Angeles Real Estate Co. v. Kerxton, 737 F.2d 416, 419 (4th Cir.1984), and therefore concludes that "Congress understood that the legal effect of the [assignment/cooperation] provision would be to provide the states with a lien on recoveries of medical costs.” Op. at 374. The difficulty with relying on such common law principles when interpreting the Social Security Act is that the anti-lien provision expressly prohibits the imposition of liens against Medicaid beneficiaries for the recovery of medical expenditures, except in circumstances not present in this case. See Norfolk Southern Ry. Co. v. Sorrell, 549 U.S. 158, 168, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007) (noting, in the context of the Fed *386 eral Employers' Liability Act (“FELA”), that "although common-law principles are not necessarily dispositive of questions arising under FELA, unless they are expressly rejected, in the text of the statute, they are entitled to great weight in our analysis” (internal quotation omitted) (emphasis added)).